371 So.2d 101 (1978)
ROGER DEAN ENTERPRISES, INC., Petitioner,
v.
The DEPARTMENT OF REVENUE of the State of Florida, Respondent.
No. 77-1893.
District Court of Appeal of Florida, Fourth District.
October 11, 1978.
Opinion Modified On Rehearing December 27, 1978.
*102 David S. Meisel of Rogers & Meisel, Palm Beach, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, for respondent.
DOWNEY, Chief Judge.
By Petition for Writ of Certiorari we have for review an order constituting final agency action of the State Department of Revenue upholding the assessment of delinquent corporate income taxes against petitioner for the years 1972-1973.
The parties have stipulated as to the facts:[1]
"Petitioner is a West Virginia corporation, organized under the laws of that state on January 4, 1958. Prior to June 1, 1962, it operated an automobile dealership in Huntington, West Virginia. On June 1, 1962, it exchanged the assets of its automobile dealership for fifty (50%) percent of the capital stock of Dutch Miller Chevrolet, Inc., a West Virginia corporation organized to succeed to the automobile dealership formerly operated by the Petitioner. Prior to this, in 1961, the Petitioner had acquired one hundred (100%) percent of the capital stock in Palm Beach Motors (the name of which *103 was changed on August 10, 1961 to Roger Dean Chevrolet, Inc.). Roger Dean Chevrolet, Inc. is a wholly owned subsidiary of the Petitioner which operates on property owned by the Petitioner. The years involved herein are the fiscal years of the Petitioner ended December 31, 1972 and 1973, during which years the Petitioner's principal income (except for the gain involved herein) consisted of rents received from Roger Dean Chevrolet, Inc. Petitioner and its subsidiary filed consolidated returns for the years involved herein. During the fiscal year ended December 31, 1972,[2] Petitioner sold its stock in Dutch Miller Chevrolet, Inc. to an unrelated third party for a gain determined by the Respondent to be in the amount of $349,217.00, which, although the sale took place out of the State of Florida, the Respondent has determined to be taxable under the Florida Income Tax Code (Chapter 220 of the Florida Statutes).
"In the fiscal years ended December 31, 1972 and 1973, Petitioner included in Florida taxable income the amounts of $76.00 and $6,245.00, respectively, from the sale of property on April 23, 1971, such gain being reported for Federal income tax purposes on the installment method under Section 453 of the Internal Revenue Code of 1954.
"Roger H. Dean, individually or by attribution during the years involved herein, was the owner of one hundred (100%) percent of the stock of Roger Dean Enterprises, Inc. and seventy-five (75%) percent of the stock of Florida Chrysler-Plymouth, Inc. The remaining twenty-five (25%) percent of Florida Chrysler-Plymouth, Inc. was owned by Robert S. Cuillo, an unrelated person. The Respondent disallowed the $5,000.00 exemption to the Petitioner in computing its Florida corporate income tax for each of the years in question on the theory that the two corporations were members of a controlled group of corporations, as defined in Section 1563, of the Internal Revenue Code of 1954.
"By letter of April 13, 1976, the Respondent advised Petitioner of its proposed deficiencies for the fiscal years ended December 31, 1972 and 1973, in the net respective amounts of $19,086.25 and $1,086.79."
Petitioner contends the Department erred in upholding the tax assessment in three respects:
(1) In holding that a gain from the sale of stock in a foreign corporation having no contacts with Florida is taxable under the Florida Corporate Income Tax Law.
(2) By imposing the Florida Corporate Income tax on gains realized prior to the amendment to the Florida Constitution which first permitted a corporate income tax.
(3) In finding that petitioner was a "member of a controlled group of corporations" within the meaning of Section 1563 of the Internal Revenue Code, which resulted in a denial to petitioner of the $5000 exception provided by the Florida Corporate Income Tax Law.
In support of its first designation of error, petitioner suggests that Florida may not impose corporate income taxes on corporate gains derived from transactions which take place outside the State of Florida and which involve a non-resident corporation where the non-resident corporation has no contacts with Florida. Additionally, petitioner contends that in any event it was entitled to be afforded the relief provided by Section 214.73, Florida Statutes (1973), which authorizes other methods of apportionment when the three factor formula does not fairly represent the extent of the taxpayers tax base attributable to Florida.
A taxpayer's adjusted federal income forms the tax base upon which the Florida Corporate Income Tax operates. The amount of the Florida corporate tax is the taxpayer's adjusted federal income for the year in question which is apportioned to *104 Florida.[3] The apportionment of the taxpayer's adjusted federal income tax is accomplished by utilization of a three factor formula: a property factor, a sales factor and a payroll factor.[4] Therefore, Florida's Corporate Income Tax Code is based upon the apportionment theory. Under this theory the taxpayer's tax base includes all of its adjusted federal income for the period in question regardless of where that income is produced. There is no elimination from the tax base of income produced by a foreign corporation in another jurisdiction.[5] The apportionment factors eliminate the essential unfairness of taxing income in the taxing jurisdiction which is earned elsewhere.
Because Florida is an apportionment state, there is no error in including the installment payments on the Dutch Miller Chevrolet Inc., stock in the tax base for 1972 and 1973, although neither the transaction nor the Dutch Miller Agency had any real contacts with Florida.
Furthermore, petitioner contends in its brief that "[t]he ordinary scheme of apportionment does not fairly represent the extent of petitioner's Florida tax base under the facts of this case, and under Section 214.73 F.S. an equitable apportionment would result only if the out-of-state sale were excluded from taxation in Florida." However, the exclusion of that gain would require the Department to violate the statute which requires that the gain (if includable for federal income tax purposes) be included in the petitioner's tax base for determination of the Florida Corporate Income Tax. As the Supreme Court of Vermont said in a similar factual situation in Hoosier Engineering Company v. Shea, 124 Vt. 341, 205 A.2d 821 (1964):
"It is not the application of the factor formula which creates the result complained of by plaintiff. Rather, it is the inclusion of the capital gain item as an integral part of plaintiff's net income. Subsection (b) does not apply to the facts presented by the record in this case. There is no area here for the use of discretion by the commissioner and he has no statutory authority to exclude capital gains or any other item of net income based on the federal code." Id. at 824.
The burden is upon petitioner to demonstrate error in the methodology used by the Department in apportioning the petitioner's adjusted federal income and the petitioner has not demonstrated such error.
Next it is argued that, since the sale of the Dutch Miller stock pre-dated the amendment to the Florida Constitution authorizing corporate income tax, it should not be subject to such tax even though certain installment payments of the sales price were paid during a tax year to which the corporate income tax was applicable. The Legislature specifically provided that the taxpayer has the option to report a gain on the installment basis just as he could do for Federal income tax purposes. It was not Legislative oversight that this method of reporting would cause installments paid after January 1, 1972, on sales which took place prior to January 1, 1972, to be taxed under the new Corporate Income Tax Code. Sensing the inequities involved in such taxation, the Legislature provided that the tax on older transactions would be imposed at a reduced percentage.[6]
We conclude that the Legislature intended the new Corporate Income Tax to apply to installment payments received by the taxpayer after January 1, 1972,[7] but produced as a result of a transaction prior to January 1, 1972; otherwise, the Legislature would not have enacted Section 220.13(1)(c). *105 We do not believe the explanation of legislative intent contained in Section 220.02(4) conflicts with Section 220.13(1)(c), but if it does, the latter section being located later in the statutory scheme and being more specific, would control.
Petitioner contends it is unconstitutional to tax said installments under the circumstances of this case. This is certainly an arguable position; however, we have considered the authorities cited by petitioner and find them inapposite. On the contrary, we believe the option afforded petitioner of reporting under the accrual method of accounting or reporting on the installment basis enables the taxation of these installments to pass constitutional muster.[8]
We have not overlooked S.R.G. Corporation v. Dept. of Rev. of St. of Fla., 365 So.2d 687 (1978) and Clearwater Federal Savings & Loan Association v. Department of Revenue of the State of Florida, 350 So.2d 1134 (Fla. 2nd DCA 1977). However, we do not believe that those cases control the decision here.
Finally, since the Department found petitioner to be a member of a "controlled group of corporations" it refused to allow petitioner the $5000 exemption allowed by Section 220.14(1), Florida Statutes (1973). Subsection (4) of that section provides:
"Notwithstanding any other provisions of this Code, not more than one exemption under this section shall be allowed to the Florida members of a controlled group of corporations, as defined in section 1563 of the Internal Revenue Code with respect to taxable years ending on or after December 31, 1970, filing separate returns under this Code."
As indicated in the factual recitation above, Roger H. Dean owns 100% of the stock in petitioner and 75% of the stock in Florida Chrysler-Plymouth Inc. The remaining 25% of Florida-Chrysler is owned by Robert S. Cuillo, an unrelated person. Section 1563 of the Internal Revenue Code defines "controlled group of corporations" as follows:
"SEC. 1563. DEFINITIONS AND SPECIAL RULES.
"(a) CONTROLLED GROUP OF CORPORATIONS.  For purposes of this part, the term `controlled group of corporations' means any group of 
* * * * * *
"(2) BROTHER-SISTER CONTROLLED GROUP.  Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing 
"(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and
"(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of the stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."
Petitioner concedes that under the facts of the case the requirements of Section 1563(a)(2)(B) are satisfied, but it contends that subsection (a)(2)(A) is not satisfied because Cuillo, the 25% stockholder in Florida Chrysler-Plymouth Inc., is not also a stockholder in petitioner. Petitioner's authority for that construction of the Internal Revenue Code is Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner of Internal Revenue, 65 T.C. 798 (1976), a case with very similar facts. However, that case was reversed in Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner of Internal Revenue, 548 F.2d 501 (4th Cir.1977), wherein the Circuit Court of Appeals rejected petitioner's contention and we think rightly so. Under the facts of this case Roger H. Dean and Robert S. Cuillo are fewer than 5 persons who own at least 80 percent of the total value of shares of all classes of the stock of each corporation.
*106 In view of the foregoing it appears to us that the final agency order being reviewed is free from reversible error.
CERTIORARI DENIED.
ANSTEAD and DAUKSCH, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
By petition for rehearing petitioner points out that our Opinion, filed October 11, 1978, contains several factual errors. The footnote on page 2, and the word "installment" used in line 13, page 4, are incorrect. Also petitioner does not contend that the sale of Dutch Miller stock pre-dated the amendment to the Florida Constitution authorizing a corporate income tax. The sale which pre-dated the corporate income tax is the sale of other property.
Accordingly, the petition for rehearing is granted and the footnote on page 2 is deleted. The first full paragraph on page 4 is deleted and the following is to be inserted in its place:
"Because Florida is an apportionment state, there is no error in including the gain on the Dutch Miller Chevrolet Inc. stock in Petitioner's tax base, although neither the transaction nor the Dutch Miller Agency had any real contacts with Florida."
In addition the first sentence in the first full paragraph on page 5 is deleted and the following is to be inserted in its place:
"Next, it is argued that, since the sale of property referred to in Petitioner's Point II pre-dated the amendment to the Florida Constitution authorizing corporate income tax, it should not be subject to such tax even though certain installment payments of the sales price were paid during a tax year to which the corporate income tax was applicable."
As modified the opinion filed October 11, 1978, is confirmed.
Since the questions involved appear to us to be of great public interest, we certify the following two questions to the Supreme Court of Florida:
1. Is the gain from an out of state sale of stock held by a foreign corporation doing business in Florida taxable under the Florida corporate income tax code.
2. Is it constitutional for the Florida corporate income tax to be imposed on a gain from property sold prior to the amendment of the Florida Constitution permitting such tax when said gain is reported on the installment basis in tax years subsequent to the passage of the amendment.
DOWNEY, C.J., and ANSTEAD and DAUKSCH, JJ., concur.
NOTES
[1] The stipulation of facts submitted by the parties has facilitated the appellate presentation of this case and we commend the general use of such stipulations to the Bar.
[2] This appears to be a typographical error as the briefs and record make it otherwise clear that the sale date was April 1971.
[3] Section 220.12(1), Florida Statutes (1973).
[4] Sections 220.15 and 214.71, Florida Statutes (1973).
[5] England, "Florida Corporate Income Taxation  Background, Scope and Analysis," Florida State University Law Review (1972), p. 13.
[6] Section 220.13(1)(c) (1973); England, "Florida Corporate Income Taxation  Background, Scope and Analysis," Florida State University Law Review, pp. 18 and 19.
[7] See Ferro Metal & Chemical Corp., et al. v. Department of Revenue of the State of Florida, 365 So.2d 419, Third District Court of Appeal (1978).
[8] England, "Florida Corporate Income Taxation", supra, note 4.