387 So.2d 358 (1980)
ROGER DEAN ENTERPRISES, INC., Petitioner,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Respondent.
No. 55971.
Supreme Court of Florida.
July 24, 1980.
*359 David S. Meisel of Rogers & Meisel, Palm Beach, for petitioner.
Jim Smith, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, for respondent.
*360 ADKINS, Justice.
By petition for writ of certiorari we are asked to review a decision of the Fourth District Court of Appeal (Roger Dean Enterprises v. The Department of Revenue of the State of Florida, 371 So.2d 101 (Fla.4th DCA 1978)), which involved questions of great public interest. The district court of appeal has certified to us the following two questions:
1. Is the gain from an out-of-state sale of stock held by a foreign corporation doing business in Florida taxable under the Florida corporate income tax code?
2. Is it constitutional for the Florida corporate income tax to be imposed on a gain from properties sold prior to the amendment of the Florida constitution permitting such tax when said gain is reported on the installment basis in tax years subsequent to the passage of the amendment?
We answer both questions in the affirmative.
The petitioner, Roger Dean Enterprises, Inc., is referred to hereinafter as the taxpayer and the Department of Revenue of the State of Florida is referred to hereinafter as the department.
The taxpayer, a West Virginia corporation, operated an automobile dealership in Huntington, West Virginia, until June 1, 1962, when it exchanged the assets of its automobile dealership for fifty percent of the capital stock of Dutch Miller Chevrolet, Inc., a West Virginia corporation organized to succeed to the automobile dealership formerly operated by the taxpayer. Prior to this, in 1961, the taxpayer had acquired 100 percent of the capital stock in Palm Beach Motors (the name of which was changed on August 10, 1961, to Roger Dean Chevrolet, Inc.). Roger Dean Chevrolet, Inc., is a wholly-owned subsidiary of the taxpayer which operates on property owned by the taxpayer.
The years involved herein are the fiscal years of the taxpayer ending December 31, 1972, and 1973, during which years the taxpayer's principal income (except for the gain involved herein), consisted of rents received from Roger Dean Chevrolet, Inc. Taxpayer and its subsidiary filed consolidated returns for the years involved herein. During the fiscal year ending December 31, 1972, taxpayer sold its stock in Dutch Miller Chevrolet, Inc., to an unrelated third party for a gain determined by the department to be in the amount of $349,217.00, which, although the sale took place out of the state of Florida, the department has determined to be taxable under the Florida Income Tax Code (chapter 220, Florida Statutes).
In the fiscal years ending December 31, 1972, and 1973, taxpayer included in Florida taxable income the amounts of $76.00 and $6,245.00, respectively, for the sale of property on April 23, 1971, such gain being reported for federal income tax purposes on the installment method under section 453 of the Internal Revenue Code of 1954.
Roger H. Dean, individually, or by attribution during the years involved herein, was the owner of 100 percent of the stock of taxpayer and 75 percent of the stock of Florida Chrysler Plymouth, Inc. The remaining 25 percent of Florida Chrysler Plymouth, Inc., was owned by another person. The department disallowed the $5,000 exemption to the taxpayer in computing its Florida corporate income tax for each of the years in question on the theory that the two corporations were members of a controlled group of corporations, as defined in section 1563 of the Internal Revenue Code of 1954.
By letter of April 13, 1976, the department advised the taxpayer of its proposed deficiencies for the fiscal years ending December 31, 1972, and 1973, in the net respective amounts of $19,086.25 and $1,086.79. Taxpayer duly filed its protest in response thereto and the department rejected taxpayer's position. Taxpayer timely requested an administrative hearing, which was held. The hearing officer issued a recommended order upholding the assessments of tax. The recommended order was submitted to the department and was approved.
*361 The returns of the taxpayer indicated that the taxpayer had no property, payroll, or sales of tangible personal property, or realty ascribable to any jurisdiction other than the state of Florida. Apparently based on these facts, the hearing officer computed in his recommended order that the taxpayer was commercially domiciled in Florida during the tax years in question.
By petition for writ of certiorari the taxpayer sought review of the final agency action, but was denied all relief. These proceedings resulted.
There is a difference between two concepts which are applied in many states that have corporate income taxes. These concepts are "allocation" and "apportionment." Allocation is a process whereby certain types of income, often called "non-business" income, generally in the nature of passive or investment income, are assigned in their entirety to a particular jurisdiction for tax purposes, usually the state of commercial domicile, theoretically, to the exclusion of all other jurisdictions. In the second concept, apportionment, the taxpayer's normal or business income is mathematically divided among the various jurisdictions in which it does business to determine the measure of local tax. Apportionment is generally accomplished by means of a three-factor formula, utilizing property, payroll, and sales in the taxing jurisdiction over property, payroll, and sales in all jurisdictions. Although some case law and other authorities have erroneously used the term allocation when actually referring to apportionment, technically the two are entirely separate, distinct, and different concepts. Of course, the taxpayer concedes that the apportionment concept is applied in Florida.
The legislature has rejected entirely the concept of allocation in favor of "full apportionment," that is, including all income of the taxpayer in the tax base subject to apportionment regardless of the sources from which that income was derived. Shortly after the adoption of the code this was explained as follows:
First, the legislature considered whether Florida should differ from the majority of states which tax corporate income by requiring for Florida a full apportionment of the taxable income reported for federal income tax purposes. This treatment of multistate taxpayers differs from the more traditional process of "allocating" i.e. assigning in full  to one jurisdiction some types of passive income, and "apportioning" i.e. assigning proportional shares of income among all the states having jurisdiction over the taxpayer only the balance. ____ Recognizing that Florida is not the "commercial domicile" for a significant number of multistate enterprises, and being aware that the allocation  apportionment format is financially advantageous only to the few commercial domicile states, the Florida Legislature elected to follow the more modern trend to full apportionment.
England, Corporate Income Taxation in Florida: Background, Scope, and Analysis in Florida Corporate Income Taxation, 4, 14 (Fla.St.Univ.L.Rev., April 1972).
It is well settled that a fairly apportioned state tax may be imposed upon the income of a business operating in interstate commerce. In Mobil Oil Corporation v. Commissioner of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (U.S. March 19, 1980), Mobil Oil Corporation was organized under the laws of New York, where it had its principal place of business and its "commercial domicile." It did business in many states, including Vermont, where it engaged in the wholesale and retail marketing of petroleum products. Vermont imposed a corporate income tax, calculated by means of an apportionment formula upon "foreign source" dividend income received by the corporation from its subsidiaries and affiliates doing business abroad. Mobil challenged the tax on the grounds, inter alia, that it violated the due process clause of the Fourteenth Amendment and commerce clause. In upholding the tax the Court said:
It long has been established that the income of a business operating in interstate commerce is not immune from fairly *362 apportioned state taxation. Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 458-462, [79 S.Ct. 357, 362-364, 3 L.Ed.2d 421] (1959); Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 120, [41 S.Ct. 45, 46, 65 L.Ed. 165] (1920); United States Glue Co. v. Oak Creek, 247 U.S. 321, 328-329, [38 S.Ct. 499, 501, 62 L.Ed. 1135] (1918). "[T]he entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs." Northwestern States Portland Cement Co. v. Minnesota, 358 U.S., at 460 [79 S.Ct., at 363]. For a State to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: a "minimal connection" between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise. Moorman Mfg. Co. v. Bair, 437 U.S. 267, 272-273, [98 S.Ct. 2340, 2344, 57 L.Ed.2d 197] (1978); see National Bellas Hess, Inc. v. Department of Revenue, 386 U.S. 753, 756, [87 S.Ct. 1389, 1391, 18 L.Ed.2d 505] (1967); Norfolk & Western R. Co. v. [Missouri] State Tax Comm'n, 390 U.S. 317, 325 [, 88 S.Ct. 995, 1000, 19 L.Ed.2d 1201] (1968). The requisite "nexus" is supplied if the corporation avails itself of the "substantial privilege of carrying on business" within the State; and "[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444-445, [61 S.Ct. 246, 250, 85 L.Ed. 1143] (1940).
100 S.Ct. at 1231.
The taxpayer sub judice argues that to tax income from an out-of-state transaction by a foreign-chartered corporation amounts to a taking of its property without due process of law in violation of the Federal Constitution, because there is no nexus between the transaction and the state of Florida. The requisite nexus is supplied when the corporation and some of its income producing activities are connected with the taxing jurisdiction. If this is the case, all of that corporation's income may be included in a fairly apportioned tax base for state income tax purposes. There is no requirement that each increment of income have a relationship to the taxing jurisdiction. Moorman Mfg. Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). Under the concept of nexus currently employed by the United States Supreme Court, the taxpayer's rental income from Florida property provides sufficient nexus to allow apportioned taxation of all its federal net income.
In the case sub judice it appears that all of the taxpayer's payroll is within the state of Florida. Also, all its real and tangible personal property is located in Florida. The trier of fact deduced that the commercial domicile of the taxpayer was also in Florida. The taxpayer does not argue that Florida utilizes the concept of "allocation" nor does the taxpayer urge any issues relating to the "commercial domicile." Primarily the taxpayer argues that the Florida formulary method of apportionment was unconstitutionally applied in the context of the facts presented and further that the taxpayer was entitled to the benefit of the relief provisions of section 214.73, Florida Statutes (1973). This section reads as follows:
Apportionment; other methods.  If the apportionment methods of §§ 214.71 and 214.72 do not fairly represent the extent of a taxpayer's tax base attributable to this state, the taxpayer may petition for, or the department may require, in respect to all or any part of the taxpayer's tax base, if reasonable:
(1) Separate accounting;
(2) The exclusion of any one or more factors;

*363 (3) The inclusion of one or more additional factors which will fairly represent the taxpayer's tax base attributable to this state; or
(4) The employment of any other method which will produce an equitable apportionment. (Emphasis supplied.)
The taxpayer also relies upon a regulation of the department which states that where the activities carried on within the state are separate from the activities outside the state, the income subject to tax may be determined upon a separate accounting of the Florida business. Fla. Admin. Code Rule 12C-1.15. These regulations are directed primarily at determining whether a multistate taxpayer operates a "unitary" business entirely subject to tax in Florida, or separate businesses in several states including Florida, as to which Florida may tax only the Florida business.
The relief provision quoted above tracks the language appearing in section 18 of the Uniform Division of Income for Tax Purposes Act (UDITPA). The Act deals with the allocation and apportionment of income of multistate businesses for tax purposes. There is a very strong presumption in favor of normal three-factor apportionment and against the applicability of the relief provisions. See Donald M. Drake Co. v. Department of Revenue, 263 Or. 26, 500 P.2d 1041 (1972). The relief provision should be used where the statute reaches arbitrary or unreasonable results so that its application could be attacked successfully on constitutional grounds. Departures from the basic formula should be avoided except where reasonableness requires. Deseret Pharmaceutical Co., Inc. v. State Tax Commissioner, 579 P.2d 1322 (Utah 1978); see Pierce, The Uniform Division of Income for State Tax Purposes, 35 Taxes 747, 782 (1957). The relief provisions applicable to apportionment should not be used to remove an out-of-state stock sale made by a foreign-chartered corporation subject to its income tax from the tax base. See F.W. Woolworth v. Commissioner of Taxes, 133 Vt. 93, 328 A.2d 402 (1974); Hoosier Engineering Co. v. Shea, 124 Vt. 341, 205 A.2d 821 (1964).
Section 214.73, Florida Statutes (1973), gives the Department of Revenue discretion to alter the apportionment formula in very rare instances, but does not vest any discretion in the department to modify federal taxable income. Cf. GTE Automatic Electric, Inc. v. Allphin, 68 Ill.2d 326, 12 Ill.Dec. 134, 369 N.E.2d 841 (Ill. 1977) (relief provision should not be interpreted to allow administrator to use it as a vehicle for tampering with the terms of specific apportionment provisions). See also Hellerstein, Construing the Uniform Division of Income for Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the "Throwback Rule", 45 U.Chi.L.Rev. 768, 790-91 (1978).
The second question certified to us reads as follows:
Is it constitutional for the Florida corporate income tax to be imposed on a gain from property sold prior to the amendment of the Florida constitution permitting such tax when said gain is reported on the installment basis in tax years subsequent to the passage of the amendment?
371 So.2d at 106.
We approve the following quote from the opinion of the district court of appeal:
Next, it is argued that, since the sale of property referred to in Petitioner's Point II pre-dated the amendment to the Florida Constitution authorizing corporate income tax, it should not be subject to such tax even though certain installment payments of the sales price were paid during a tax year to which the corporate income tax was applicable. The Legislature specifically provided that the taxpayer has the option to report a gain on the installment basis just as he could do for Federal income tax purposes. It was not Legislative oversight that this method of reporting would cause installments paid after January 1, 1972, on sales which took place prior to January 1, 1972, to be taxed under the new Corporate Income Tax Code. Sensing the inequities involved in such taxation, the Legislature provided *364 that the tax on older transactions would be imposed at a reduced percentage.
We conclude that the Legislature intended the new Corporate Income Tax to apply to installment payments received by the taxpayer after January 1, 1972, but produced as a result of a transaction prior to January 1, 1972; otherwise, the Legislature would not have enacted Section 220.13(1)(c). We do not believe the explanation of legislative intent contained in Section 220.02(4) conflicts with Section 220.13(1)(c), but if it does, the latter section being located later in the statutory scheme and being more specific, would control.
Petitioner contends it is unconstitutional to tax said installments under the circumstances of this case. This is certainly an arguable position; however, we have considered the authorities cited by petitioner and find them inapposite. On the contrary, we believe the option afforded petitioner of reporting under the accrual method of accounting or reporting on the installment basis enables the taxation of these installments to pass constitutional muster. (Footnotes omitted).
371 So.2d at 104, as modified at 106.
The manner in which the taxpayer exercised its choice distinguishes this case from S.R.G. Corporation v. Department of Revenue, 365 So.2d 687 (Fla. 1978), and Clearwater Federal Savings & Loan Association v. Department of Revenue, 350 So.2d 1134 (Fla.2d DCA 1977) aff'd 366 So.2d 1164 (Fla. 1979). Under the position which the department was advocating in both of those cases, the taxpayers could have had no option by which the income realized prior to November 2, 1971 (the effective date of the Florida corporate income tax law) could have escaped inclusion in the Florida tax base since it was included in federal taxable income under the statutory formula for years ending after January 1, 1972. The taxpayer sub judice did have a choice. If it had chosen not to use the installment method for Florida, the statute would have subjected none of the gain from its 1971 installment sale to taxation. The taxpayer describes this as a harsh alternative since it would require future sales to be taxed completely in the year of realization. However, in the long run, the taxpayer would pay no additional tax to the state by making this choice. Moreover, the Florida rate of five percent is considerably below federal rate, presenting an additional reason why the full accrual approach is, in fact, a reasonable alternative to give a taxpayer who desires to free income from a 1971 installment sale from any taxation at all.
The inclusion of installments in later years from sales made prior to the effective date of the statute cannot be successfully challenged on due process grounds. Although not pressed by the taxpayer, this issue may be implicit in the certification of the district court of appeal since no specific constitutional provision was mentioned. Other states have been almost unanimous in holding there is no unconstitutional denial of due process. Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); Estate of Kennett v. State, 115 N.H. 50, 333 A.2d 452 (1975); Tiedemann v. Johnson, 316 A.2d 359 (Me. 1974); Altsuler v. Peters, 206 N.W.2d 570 (Neb. 1973); Kapzenberg v. Comptroller of the Treasury, 282 A.2d 465 (Md. 1971). The taxpayer finds some relief in Thorpe v. Mahin, 43 Ill.2d 36, 250 N.E.2d 633 (1969). This case seemed to turn on an ambiguity in the statute necessitating a construction in favor of the taxpayer. Nevertheless, we do not follow its line of reasoning.
The result reached by applying section 220.13(1)(c), Florida Statutes (1973), to the taxpayer's 1972 and 1973 installment receipts from its 1971 sale in no way infringes upon the federal due process of law requirement.
Under the provisions of section 220.14(1), Florida Statutes (1973), corporate taxpayers are generally allowed an exemption of $5,000 of net income in computing their tax liability. However, under subsection (4) of section 220.14, only one exemption is allowed to the Florida member of a "controlled group of corporations" filing separate returns. The term "controlled group *365 of corporations" under that section is as defined in section 1563 of the Internal Revenue Code of 1954:
(a) CONTROLLED GROUP OF CORPORATIONS.  For purposes of this part, the term "controlled group of corporations" means any group of 
* * * * * *
(2) BROTHER-SISTER CONTROLLED GROUP.  Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing 
(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and
(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.
Roger H. Dean, individually, or by attribution during the years, was the owner of 100 percent of the stock of Roger Dean Enterprises, Inc., and 75 percent of Florida Chrysler Plymouth, Inc. The remaining 25 percent of Florida Chrysler Plymouth, Inc., was owned by Robert S. Cuillo, an unrelated person. The question involved here is whether Roger Dean Enterprises, Inc., and Florida Chrysler Plymouth, Inc., were members of a controlled group of corporations. Roger H. Dean and Robert S. Cuillo are fewer than five persons who own at least 80 percent of the total value of shares of all classes of the stock of each corporation. Section 1563(a)(2)(A), Internal Revenue Code (1954); Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner of Internal Revenue, 548 F.2d 501 (4th Cir.1977); T.L. Hunt, Inc. v. Commissioner, 562 F.2d 532 (8th Cir.1977).
We adopt the reasoning of these decisions in construing the Florida corporate income tax provisions.
In summary, we hold as follows:
Answering the first question in the affirmative, we hold that the gain from an out-of-state sale of stock held by a foreign corporation doing business in Florida may be taxable under the Florida corporate income tax code.
Answering the second question in the affirmative, we hold that it is constitutional for the Florida corporate income tax to be imposed on a gain from property sold prior to the amendment of the Florida Constitution permitting such tax when said gain is reported on the installment basis in tax years subsequent to the passage of the amendment.
We approve the decision of the district court of appeal and, having answered the questions certified to us, we discharge the writ of certiorari.
It is so ordered.
SUNDBERG, C.J., and BOYD, ENGLAND and ALDERMAN, JJ., concur.
OVERTON, J., concurs with the opinion with regard to the first question, but dissents to the second question and would apply S.R.G. Corp. v. Dept. of Revenue, 365 So.2d 687 (Fla. 1978).