LARIO, J. T. C.
Plaintiffs filed a complaint to reverse a deficiency assessment against them for additional New Jersey income taxes claimed due. Both parties have now filed cross-motions for summary judgment.
Involved is the interpretation of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et scq. (act). The portion of the act which is at the heart of the controversy, § 9-27(a), reads as follows:
This act shall take effect immediately and shall be applicable with respect to items of income, deduction, loss or gain occurring in taxable years ending on or after July 1, 1976 but only to the extent such items have been earned, or incurred on or after July 1, 1976. [Emphasis supplied; footnotes omitted]
To be resolved is whether the balance of money due on an installment sale consummated in 1973 which was received in 1977 is includable as income in plaintiffs’ 1977 tax return.
Although the parties filed separate statements of the case, the material facts necessary to decide the issues involved herein are not in dispute.
Plaintiffs, New Jersey residents, were the owners of a tract of land which had been inherited by Mrs. DuBois in 1955. In 1973 they sold the property for $460,812. Plaintiffs’ adjusted cost basis and expenses of sale totaled $107,571, which resulted in a profit of $353,241. They received a cash payment of $115,203, and the balance of $345,609 was secured by a note and purchase-money mortgage.
*14 For federal income tax purposes plaintiffs reported this gain on their 1973 federal return and they elected the installment method of reporting pursuant to § 453 of the Internal Revenue Code (Code IRC).
During the calendar year 1977 plaintiffs received the balance due under the note, $181,485 of which represented capital gain pursuant to this sale. In their 1977 federal income tax return plaintiffs reported this gain of $181,485 but they did not include this sum in their 1977 New Jersey Gross Income Tax return.
By reason of plaintiffs’ failure to include the gain in their New Jersey return, defendant assessed a deficiency in tax amounting to $4,537.08, a penalty of $226.85 and interest to September 30, 1980 in the amount of $1,002.70. Plaintiffs thereupon appealed the assessment.
Defendant alleges that the gain in question is subject to New Jersey’s Gross Income Tax since it was received by plaintiffs in 1977 and it was reported by them in that year for federal income tax purposes.
Plaintiffs claim that (1) the gain was “earned” in 1973 when the tract of land was sold and the note received; therefore no income or gain was “earned” in 1977 when the final principal payment on the note was made, and (2) if the New Jersey Gross Income Tax Act is interpreted as alleged by defendant, (a) the act would create an arbitrary discrimination between taxpayers, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the similar protection provided by the New Jersey Constitution; (b) it would be so retroactive in effect that it would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and (c) the New Jersey Gross Income Tax as a whole is unconstitutional as an invalid delegation of legislative authority.
Taxpayers allege that under § 27(a) only income earned on or after July 1,1976 is taxable. They urge that since the sale was completed in 1973, the gain was “earned” in 1973 when the land was sold and note received, and no income or gain was “earned” *15 in 1977 when the final principal payment on the note was made; therefore, no tax is due thereon.
They further contend that the Legislature, by deleting from prior drafts of § 27(a) the word “received,” thereby intended that “earned” not be synonymous therewith.
Defendant disagrees and construes the word “earned,” as applied to a cash-basis taxpayer, to be synonymous with “received,” contending that since the payment was received in 1977 and reported by them in their federal return as an installment receipt it is also income to them for 1977 under New Jersey’s act.
There are several dictionary definitions of the word “earned.” See McMenamy v. Director, 3 N.J.Tax 356, 359-361 (Tax Ct. 1981), and authorities and cases cited therein. One definition is to receive, realize, gain, get or acquire, or to come to have possession, use or enjoyment in return for one’s labor, service, effort or merit. Under this interpretation “earned” is “received.”
Another interpretation defines “earned” as to gain, merit or deserve in return for effort, labor or service, “whether the award is received or not.” Under this definition “earned” is equivalent to “legally determined,” that is, wages, reward and consideration are earned the moment labor is done or service or contractual obligations are rendered, and not when payment is ultimately received.
The word “earned,” as applied to taxable gross income as used in our act, which was adopted recently, has not yet been interpreted by our appellate courts. However, the words “earned” and similar terms included in tax statutes have previously been interpreted by courts of several other states that have also considered the issue of inclusion of installment gain from pre-enactment sales within the ambit of their state income taxes. Though the statutes in question were not completely identical to N.J.S.A. 54A:9-27(a), the intent of the legislatures involved appears to be the same as that of the New Jersey Legislature.
*16 Katzenberg v. Comptroller, 263 Md. 189, 282 A.2d 465 (Ct.App. 1971), involved taxation of payments received in 1967 and 1968 arising from installment sales of capital stock completed from 1962 to 1964. The Maryland income tax law was restructured in 1967, adopting as its base the taxpayer’s adjusted gross income for federal tax purposes, thus bringing capital gains within the Maryland income tax for the first time. 282 A.2d at 466-67. Holding the gain portions of the 1967 and 1968 installments taxable under the state act, the Maryland court noted that:
... the existence of a capital gain was realized when the sales were made (assuming the notes were paid or could be disposed of), but the [taxpayers] preferred to defer the recognition of the gain for federal tax purposes until the time when and if the notes were paid or otherwise disposed of. It was the deferral of some part of this recognition until the years 1967 and 1968, when the Maryland Act was fully operative which brought the gains recognized in those years within the scope of the Act. [282 A.2d at 471]
The Katzenberg analysis was reaffirmed in Marco Associates Inc. v. Comptroller, 265 Md. 669, 291 A.2d 489 (Ct.App.1972).
The issue was also considered by Maine’s Supreme Court in Tiedemann v. Johnson, 316 A.2d 359 (1974). There the taxpayer sold real estate prior to the July 1, 1969 effective date of the Maine Income Tax Law, electing installment treatment for federal tax purposes. At issue was gain attributable to installments received in 1970 and 1971. The effective date provision is very similar to N.J.S.A. 54A:9-27(a). It provides:
Effective date. Section F of this Act shall take effect ... July 1,1969 and shall be applicable with respect to items of income, deduction, loss or gain accruing in taxable years ending on or after such effective date but only to the extent such items have been earned, received, incurred or accrued on or after such effective date. [316 A.2d at 361, quoting Maine Income Tax Law, P. &S.L. 1969, c. 154, § F]
The Maine court found the above statute less than clear and the legislative record barren of comment.
The taxpayers argued that all gain was “accrued” before the effective date, and therefore exempt. The court found “no indications that the Legislature intended other than an objective ‘yardstick’ approach to measurement of Maine income for taxing purposes.” 316 A.2d at 364. Holding against the taxpayer, the court found that by adopting federal adjusted gross income as a *17 base the state legislature intended to create a simple scheme which would obviate the necessity of determining the source, nature or composition of the income taxed. In response to the taxpayer’s contention that “realization” had occurred at the time of the sale, the court noted that the term “realization” was not employed in the Maine act and that resort to the technicality of realization could not amend the legislature’s express intention to utilize federal adjusted gross income as a yardstick.
Nebraska’s income tax statute does use the term “realized.” A taxpayer challenged application of the statute to gain on installments due to a pre-enactment sale of property. The court found that “[t]he term ‘realized’ has for a very long time had a well-established connotation. In general it means received, paid, debited, or incurred, in accordance with the method of accounting authorized for use by the taxpayer.” Altsuler v. Peters, 190 Neb. 113, 206 N.W.2d 570, 577 (1973). A regulation issued under the Nebraska statute specifically provided for taxation of currently-received installments on prior sales. The court held:
It makes little difference whether we say the gain is realized but recognition is postponed, or say that there is no realization until receipt of the installment. In the absence of some contrary indication in the Nebraska Revenue Act of 1967 it appears to us, as we have already indicated, that the Legislature used the term realized, in the context we are now using it, primarily in the sense of received. [206 N.W.2d at 578]
In Roger Dean Enterprises, Inc. v. State, 387 So.2d 358 (1980), the Florida Supreme Court followed the Katzenberg case in taxing gain due to installments received which were attributable to a pre-enactment sale of stock on the installment method.
However, a South Carolina case appears to have given a different construction to an installment basis sale. In Adams v. Burts, 245 S.C. 339, 140 S.E.2d 586 (1965), a cash-basis taxpayer sold timber in 1958 and chose to receive the proceeds in installments. Although in 1958 there was no statutory authority in South Carolina for reporting income on an installment basis, the state acquiesced and permitted the taxpayer to report gain on the sale in installments. Id. 140 S.E.2d at 587-588. Subsequent to the sale the South Carolina income tax code was amended to *18 provide a deduction equal to one-half of gains and losses from the sale of capital assets. The amendment’s effective date provision made the deduction “effective with respect to income earned on and after January 1, 1960.” The taxpayer claimed the deduction with respect to installments received in the years 1960-1962. The state disagreed, claiming that the income was “earned” as of the date of the sale.
The court found against the taxpayer, stating that acceptance of the taxpayer’s construction of “earned” as “received” would in effect discriminate against accrual-basis taxpayers and in favor of cash-basis taxpayers. The court then stated, with no support whatsoever, that this was not the intent of the legislature in providing the deduction. This reasoning is unpersuasive at best.
The court specifically found that the sale was fully consummated in 1958 for tax purposes. 140 S.E.2d at 588. Since at the time of the sale the taxpayer was on a cash-basis tax accounting method and the installment-basis reporting method was not recognized by South Carolina’s statute, under federal tax accounting principles the total gain normally would be deemed earned and includable as taxable income within the tax year when the sale was fully consummated. The question of whether the taxpayer should have been required to report his entire profit as income in the year of the sale was commented upon by the court but not answered because the issue was deemed “not before us for decision.” 140 S.E.2d at 589. By reason of this unusual state of the case, the legal principle to be derived from this decision is unclear. If it stands for the proposition that where there exists no statutory authority for installment method reporting, income is “earned” and thereby includable within the tax year when a sale is fully consummated, the principle is in accordance with the majority rule. If, however, it holds that even where an installment method is lawfully permitted and elected, gain is “earned” and thereby includable as taxable income at the time the sale is consummated, it reflects an isolated minority view. In any event, since there existed no *19 statutory authority for installment method reporting, this decision can be given no authoritative influence.
An analysis of the cases cited herein leads to the conclusion that in income tax cases most courts have construed the terms “earned” or “realized” with reference to the taxpayer’s tax accounting method, and use by the various legislatures of the terms “earned,” “accrued,” “received” or “realized” in their effective date provisions was not intended to change the method by which any taxpayer is required to report income. In order to determine what our Legislature intended by the word “earned” as used in N.J.S.A. 54A:9 -27(a), however, we must consider not only interpretations by other jurisdictions; we must also analyze the act as a whole.
N.J.S.A. 54A:8--3(e) provides: “A taxpayer’s accounting method under this act shall be the same as his accounting method for federal income tax purposes.” Accounting methods for federal income tax purposes are derived from the Code and Federal Income Tax Regulations (Regulations) adopted thereunder.
Under the Code and Regulations there are several permissible methods for computing federal taxable income. Section 446 of the Code, entitled “General Rule for Methods of Accounting,” provides:
(c) Permissible Methods. — Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—
(1) The cash receipts and disbursements method;
(2) an accrual method;
(3) any other method permitted by this chapter; or,
(4) any combination of the foregoing methods permitted under regulations
prescribed by the Secretary.
The first two methods enumerated therein, known as the cash receipts and disbursements and the accrual methods, are the tax accounting methods adopted by most taxpayers. As a general rule, a cash-basis taxpayer recognizes income in the tax year in which it is actually or constructively received. Treas.Reg. 1.446-l(c)(l)(i) (1957). Normally, with regard to disposition of *20 property by a cash-basis taxpayer, gain is recognized when it is received. Therefore, .for a cash-basis taxpayer income is “earned” when received.
In the case of an accrual-basis taxpayer income is recognized when all events have occurred which fix the taxpayer’s right to the income and the amount thereof is determinable with reasonable accuracy. Treas.Reg. 1.446-l(c)(l)(ii) (1957). In this instance income is includable in the tax year in which the “all events” test has been met, even though it is received in a later year. Under this method income falls within the second dictionary definition of “earned” when it is “legally determined.”
In addition to the cash and accrual methods, other methods of tax accounting are permitted under the Code chapter which is entitled “Methods of Accounting.” Subtitle A, c. IE, Part II.[1] Under § 453 thereof the installment method of accounting is expressly permitted.[2] A taxpayer who receives gain from the sale of real property on a qualified installment plan is permitted to elect in the year of sale “[t]o return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.” IRC § 453A. [Emphasis supplied]. In this instance, although a cash-basis taxpayer has actually received and fully realized his gain when the sale was completed, he is permitted to delay reporting the proportional amount of gain attributable to each installment until the payments on the note are actually received. Provided all conditions of the Code are *21 met, no permission from the Commissioner of Internal Revenue is required to adopt installment-basis reporting. In this situation, by reason of the specific provision in the Code permitting the installment method to be elected, it is not the realization but the recognition of the income which is postponed.
Hence, although income from an installment sale is realized when it is actually received or legally determined, by reason of the election permitted by the Code it is not “returnable” income until the year in which the installment payment is received. Therefore, depending on a taxpayer’s method of accounting, where no election is made, income from an installment sale may be consistent with either of the aforesaid dictionary definitions of “earned.” However, when an installment sale election is made it falls within a third category created by the Code for federal tax purposes in which the recognition of income is postponed.
Next to be examined is how federally-recognized tax accounting methods have been applied in our act. N.J.S.A. 54A:5- -1 itemizes the various enumerated categories of income to be taxed, some of which are:
Subsection (a) includes salaries, wages, tips, fees, commissions, bonuses and other remuneration received for services rendered. Since the Legislature has directed that a taxpayer’s accounting method shall be the same as his federal tax accounting method, the income itemized in this section is recognized by a cash-basis taxpayer when received, and by an accrual-basis taxpayer when it is “legally determined” under the “all events test,” regardless of when received.
Subsection (b) includes the net profits from a business, profession or other activity, “determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes.” Under this provision net profits are recognized either (i) when they are received; or, (ii) when they accrue, depending upon the taxpayer’s method of tax accounting.
*22 Subsection (c) includes net gains derived from the sale of property, “as determined in accordance with the method of accounting allowed for federal income tax purposes.” Thus, income attributable to such gains is recognized either when it is received or accrued — depending on the taxpayer’s method of accounting, or, if the gain is attributable to a qualified installment sale, the taxpayer may elect to return the gain under the installment basis as permitted by the Code, even though it was actually or constructively received in a prior year.
Under subsections (a), (b) and (c) the Legislature set forth rules as to timing of recognition which are consistent with both dictionary definitions of “earned,” and under subsection (c) it recognized the third category created by the Code which in effect treats the income attributable to the gain as “earned” when the installment payment is received. Thus, installment sale treatment embodies yet a third definition, for tax purposes only, of when income may be “earned.”
If the effective date provision of our act, N.J.S.A. 54A:9-27(a), were construed to exclude from gross income all income “legally determined” but not received prior to July 1, 1976, it would exclude many of the items of income previously included in chapter 5, even though the taxpayer was under the cash-basis federal tax accounting method. Applying this interpretation, it would be almost impossible to ascertain exactly what portion of income for services, dividends and pensions received after July 1, 1976 would be attributable solely to income “legally determined” after that date. Under this theory the act would also have no readily ascertainable effective date provision for the receipt of passive investment income. This construction would be inconsistent with the Legislature’s various definitions of gross income.
If “earned” were interpreted in all situations to be consistent with the dictionary’s definition of “received,” its application would include as taxable under the act accrual-basis income which accrued prior to, but was received after, July 1, 1976. This would be inconsistent with the intent of §§ 5-l(a), (b) and *23 (c) and at odds with the federal income tax accounting method which recognizes the accrual method of accounting.
It is highly improbable that the Legislature would in one chapter include certain items as gross income and then exclude them in another; clearly, the act should not be construed to reach this result.
Where a choice must be made between two conflicting interpretations, the view should be selected which more likely accords with the probable legislative purpose. Monmouth Co. v. Wissell, 68 N.J. 35, 43, 342 A.2d 199 (1975).
By defining the items which constitute gross income and directing that federal income tax accounting methods be applied, the Legislature has accepted all accounting methods recognized by the Code and the Regulations. It is obvious that the Legislature’s purpose was to adopt a simple procedure for the determination and timing of income and deductions, in accordance with federal income tax accounting principles. Therefore, for New Jersey Gross Income Tax returns, a federal cash-basis taxpayer reports his income as “earned” upon actual or constructive receipt; a federal accrual-basis taxpayer reports income as “earned” when all events have occurred which fix the taxpayer’s right to the income and the amount thereof is determinable with reasonable accuracy; and a taxpayer who has a gain from an installment sale which he federally reported under the installment method, includes the proportionate gain as “earned” upon receipt of the installment payment. Hence, “earned” income as used in the act means income as determined by a taxpayer’s recognized accounting method adopted by him for federal income tax purposes.
Nevertheless, the taxpayer alleges that although qualified installment-basis income is taxable for federal purposes when the installment payment is received, the effective date clause as adopted New Jersey’s Legislature specifically excluded installment payments derived from income which was actually or constructively received prior to July 1, 1976, arguing that “it was never intended to make income, not otherwise covered by the act, subject to the provisions of the act.”
*24 Disposal of this contention necessitates a determination of legislative intent. Since it has been determined herein that “earned,” as used in § 27(a), includes income as determined by a taxpayer’s federal income tax accounting method, what was the Legislature’s purpose in including the clause “but only to the extent such items have been earned or incurred on or after July 1, 1976”?
In examining the entire paragraph of § 27(a), it is noted that by eliminating the last phrase, “but only to the extent that such items have been earned or incurred on or after July 1, 1976,” (emphasis supplied), the section would then direct that the act be applicable “to items of income . . . occurring in taxable years ending on or after July 1, 1976.” This would have led to an unintended result. Under N.J.S.A. 54A:l-2(k) “taxable year” is defined as “the calendar or fiscal accounting period for which a tax is payable under the act.” Since the act became effective July 1,1976, all taxpayers reporting under a fiscal-year accounting method would be required to file short returns for tax years ending July 31,1976 and monthly thereafter, until May 31, 1977; and calendar-year taxpayers would initially file for the tax year ending December 31, 1976. Under both methods a taxpayer’s initial return would be for a “taxable year” which began prior to July 1, 1976. Because of the definition of “taxable year,” without adding the last phrase, a taxpayer would have been required to include in his initial return all items of income, deduction, loss or gain occurring within his entire taxable year, even though “such items” were earned during that portion of the tax year prior to the effective date of July 1, 1976. Therefore, this latter phrase specifically qualifies the beginning of the sentence and limits the income and deductions to be reported. This means that on the initial tax year return calendar-year taxpayers would have excluded income and deductions earned or incurred between January 1, 1976 and June 30, 1976; fiscal-year taxpayers would have excluded income and deductions earned or incurred between the beginning of the fiscal year and June 30, 1976.
*25 Furthermore, no substantive change in meaning of when income becomes taxable was intended by the Legislature when it deleted the word “received” from prior drafts of § 9-27(a); instead, it was removed to avoid a possible inconsistent interpretation. As originally introduced in the Assembly, this sentence read:
Effective date. This Act shall take effect immediately and shall be applicable with respect to income occurring in taxable years ending on or after January 1, 1976, but only to the extent such income has l>een earned or received on or after January 1, 1976. [Emphasis supplied]
As previously illustrated, under federal tax accounting methods income is not in every instance taxable when received. Having directed the use of a taxpayer’s federal tax method of accounting in § 8-3(c), had the Legislature retained “received” in this clause, an inconsistency would have resulted. For example, it would have been possible for an accrual-basis taxpayer to have accrued income under the “all events test” prior to the effective date of this act but receive it subsequent thereto. N.J.S.A. 54A:8-3(c), which recognizes accrual-basis accounting, would exclude its being reported, but this section, without deleting “received,” would not, since it includes income “earned or received” after January 1, 1976. In addition, as originally proposed, no provision was made for “deduction, loss or gain.” This was obviously an oversight; therefore, before its final adoption, the Assembly committee corrected the deficiency and, in so doing, it also changed “earned or received” to “earned or incurred,” so that the reporting of income and loss would be consistent with federal tax accounting principles.
In the instant case plaintiffs sold their property in 1973, at which time they received a note for the balance of their payment. Since plaintiffs were operating on a cash basis, ordinarily their income would have been recognized when it was received. In this instance the gain was realized when plaintiffs received cash and a note for the balance due. However, in 1973 plaintiffs elected for federal income tax purposes to treat their income from the sale under the installment method, thereby requiring them “to return as income ... in any taxable year *26 that proportion of the installment payments actually received in that year. . .,” in accordance with the provisions of § 453A of the Code. Having so elected, then by reason of N.J.S.A. 54A:5-1(c) and 54A:8-3(c), any portion of the gain received by them during the tax year 1977 constitutes gross income as “determined in accordance with the method of accounting allowed for federal income tax purposes.” Therefore, it is includable as income “earned” for the tax year 1977.
With respect to the question of constitutional equal protection raised by plaintiffs, Art. I, par. 1 of the New Jersey Constitution has been held to provide protection comparable or superior to that of the Fourteenth Amendment of the United States Constitution. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 79, 389 A.2d 465 (1978). Thus, the standards and analysis under either provision are essentially the same.
The degree of discretion accorded to states is particularly strong in the area of taxation. In Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959), the court stated:
The States have a very wide discretion in the laying of their taxes.... Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation, [at 526, 79 S.CL at 440]
More recently, the Supreme Court has further articulated the standard:
The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination... Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, [footnote omitted] the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation. [Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973); citations omitted]
In Hellman v. Director, 2 N.J.Tax 240 (Tax Ct. 1981), this court held that “[t]he Legislature has broad discretion in formulating fiscal policy and in arranging the state tax structure. Its judgment in seeking to achieve an equitable distribution of the *27 tax burden is not violative of equal protection requirements unless its classification is ‘palpably arbitrary.’ ” [at 249; citations omitted]
In Katzenberg, supra, the taxpayer mounted an equal Protection challenge, claiming unfair treatment compared to taxpayers who had not elected installment sale reporting for federal income tax purposes. The court rejected this argument:
It seems to us that the State has the better of this argument when it says that the Act uses as a base an individual taxpayer’s adjusted gross income reported for federal income tax purposes, with certain additions and subtractions. The Act is not directed at payments received from installment sales before the date of its enactment. Neither does it purport to be a tax on capital gains as such or a tax on installment payments as such. It is rather a tax measured by the yardstick of income reported for federal tax purposes, whether capital gains be reflected in this figure or not. This is by no means the discrimination identified in Blaustein v. Levin, State Tax Commission [176 Md. 423, 4 A.2d 861] as ‘taxing one group of persons . . . without including others who are similarly situated.’ Impermissible discrimination is spawned not by reasonable classification but by arbitrary distinctions between persons in the same class. [282 A.2d at 472; citation omitted]
As in Katzenberg, discriminatory taxation of installment recipients does not seem to be a specific aim of the New Jersey Gross Income Tax Act. Rather, this results from adoption for state purposes of the taxpayer’s federal accounting method. This adoption certainly seems justified in the interests of simplicity and avoidance of complexity with respect to the timing of income. For these reasons the New Jersey act does not work a denial of equal protection. The taxpayer’s reliance on Pabst v. Commissioner of Taxes, 136 Vt. 126, 388 A.2d 1181 (1978), is misplaced.
Concerning the issue of constitutional retroactivity as it applies to due process, the threshold question here is whether there is retroactivity at all, in view of the fact that the tax is levied on installments received after the date of the act. Other courts appear unanimous in finding no retroactivity in a situation such as that presented by the instant case. With respect to taxation of installment payments, the First Circuit Court of Appeals has stated that “[w]hen a taxpayer chooses to spread the realization of income from a transaction over a number of *28 years .. . the government does not violate due process by taxing that income under the revenue laws in effect in the year in which it is received and reported.” Picchione v. Commissioner, 440 F.2d 170, 173 (1 Cir., 1971), cert. den. 404 U.S. 828, 92 S.Ct. 66, 30 L.Ed.2d 57 (1971).
In response to the taxpayer’s due process argument, the court in Katzenberg, supra, said:
The Katzenbergs make much of the fact that the transactions which were completed in 1962, 1963 and 1964 fail to meet the “recent transaction” test applied in Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938) and Cooper v. United States, 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930). This test, however, is clearly inapplicable here. First of all, the argument overlooks the new ingredient which the Katzenbergs themselves introduced when they elected to be paid in installments rather than in cash and thus chose to spread the recognition of their capital gain, and the payment of the federal income tax imposed on that gain, over a period of years. Secondly, it is not the 1962-1964 sales, but the 1967-1968 profits which the Act reaches.... [282 A.2d at 470; citation omitted]
In Tiedemann, supra, the court found no retroactivity in a similar situation, for the same reason given by the court in Katzenberg. This conclusion seems consistent with installment method principles in general. The taxable event is receipt of the installments. Since this is a current event, there is no retroactivity. Furthermore, as was said in Heilman, supra, “[tjaxpayers do have the right to order their affairs to minimize taxation but each taxpayer conducts his affairs subject to a degree of risk. The Legislature is not obligated to give specific advance notice of its proposed fiscal enactments.” 2 N.J.Tax at 247.
In view of the above conclusion that there is no retroactivity, there is no need to delve into the issue of whether the “recent transaction” test is satisfied. Trial courts should avoid passing upon constitutional issues unless imperative. N. J. Sports & Expo. Autb. v. McCrane, 61 N.J. 1, 8, 292 A.2d 545 (1972); State v. Fair Lawn Service Center, Inc., 20 N.J. 468, 470-471, 120 A.2d 233 (1956).
Taxpayers also argue that adoption of a taxpayer’s federal tax accounting method, in the instant case, actually creates a tax on prior-sale installments, and is thus an unconstitutional delegation of legislative authority.
*29 The argument that a new tax is created is clearly specious. The issue here is to what the tax may permissibly be applied. Thus, this case is analytically no different from many others involving challenge of a state tax statute because it adopts as its base federal adjusted gross income or taxable income. In Katzenberg, supra, adoption of federal adjusted gross income as a base for the state levy was held not to create an unconstitutional delegation of legislative authority. The same applies for adoption by a state of the federal method of calculating net income. Featherstone v. Norman, 170 Ga. 370, 153 S.E. 58 (1930). As the court said in Featherstone, “[t]he mere adoption of the method fixed by the federal law is not vesting in Congress the power to create the state’s method.” 153 S.E. at 70. Similarly, in Pabst, supra, the adoption of the federal determination of taxable gifts and the federal gift tax rate schedule was held not to be an unconstitutional delegation of responsibility to the federal government. 388 A.2d at 1183-1184.
In New Jersey the standard was set forth by our Supreme Court in Pascucci v. Vagott, 71 N.J. 40, 362 A.2d 566 (1976). A legislative body may delegate legislative authority provided that it has exercised the essentials of the legislative function of determining the basic legislative policy and formulating a rule of conduct. Id. at 49, 362 A.2d 566. Thus, this court held in Heilman, supra, that “[wjhere parallels between state and federal taxes exist, taxpayer convenience and administrative expediency is promoted by using the same definition. Adoption of federal income tax definitions or delegation to an administrator to do so has been held a valid delegation of authority.” 2 N.J.Tax at 250.
Under the above standard, adoption of a taxpayer’s federal tax accounting method is clearly not an invalid delegation. Surely such an adoption is of a lesser degree than those involved in Katzenberg, Featherstone and Pabst.
For the reasons expressed, the Director’s assessment is affirmed.

 Treas.Reg. § 1.446-l(a)(2) (1957) states: “It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income."

See, also, Treas.Reg. § 1.446-l(c)(l)(iii) (1957), which provides: “Other permissible methods. Special methods of accounting are described elsewhere in chapter 1 of the Code and the regulations thereunder. For example, see the following sections and the regulations thereunder: . .. section 453, relating to the installment method.... ” [Emphasis supplied]