LARIO, J.T.C.
This is an appeal challenging an assessment levied by the Director, Division of Taxation (Director) against Richard L. Mutch and Janet, his wife, for a deficiency in their 1982 New Jersey gross income tax return. At issue is whether payment made by Richard’s employer directly to Richard’s pension plan in 1982 is income properly includable in plaintiffs’ New Jersey gross income tax return for 1982 as determined by the Director; or, may it be delayed until it is actually withdrawn as claimed by plaintiffs.
*614 Richard and his employer, Whittle & Mutch, Inc., on December 31, 1979 entered into a “Simplified Employee Pension-Individual Retirement Accounts Contribution Agreement” under section 408(k) of the Internal Revenue Code of 1954 (the code). The agreement continued into effect for the full tax year of 1982.
In plaintiffs’ 1982 New Jersey gross income tax return Richard’s listed gross income for remuneration received from Whittle & Mutch, Inc. was $3,568.10 less than as reported on his W-2 form issued by his employer. Plaintiffs deducted this sum as being the amount allegedly contributed by Richard’s employer to Richard’s section 408(k) (Simplified Employee Pension [SEP]) account, claiming it was not income received in 1982. Upon audit of plaintiffs’ 1982 return the Division of Taxation made a determination that the employer’s contribution, which plaintiffs claimed to be $3,568.10, was income received by Richard in 1982 resulting in the Division’s levying a deficiency calculated upon that amount.[1] Plaintiffs paid the deficiency, interest and penalty as determined by the Division of Taxation, then filed this appeal.
During trial it developed that the claimed $3,568.10 contribution to Richard’s SEP plan was actually deposited to Richard’s account in calendar year 1983; it was subsequently stipulated that the correct amount deposited to his SEP account during calendar year 1982 was $1,166.98. This sum was deposited by the employer directly to Richard’s SEP account in the Girard Bank on March 12, 1982. It was further stipulated that Richard had not attained age 59 and no amount of the contributions to the SEP was, nor could have been, withdrawn by Richard during the 1982 calendar year without incurring a penalty.
Defendant contends that the amount contributed by Richard’s employer to his SEP constituted remuneration within the meaning of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 *615 et seq. (act) and since the source of this contribution is not specifically excluded by the act it cannot be excluded from plaintiffs’ New Jersey gross income.
New Jersey’s act is a tax imposed on “the New Jersey Gross Income of every individual estate or trust ... subject to the deductions, limitations and modifications hereinafter provided____” N.J.S.A. 54A:2-1. “Gross Income” is defined by N.J.S.A. 54A:1-2(d) to “include that set forth in Chapter 5 hereunder.” The latter chapter states in pertinent part: “Gross Income shall consist of ... (a) Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered____” N.J.S.A. 54A:5-1(a). The amount contributed by Richard’s employer to Richard’s SEP was a benefit to Richard for his services as an employee and, as such, it unquestionably constituted “remuneration for services rendered” within the definition of N.J.S.A. 54A:5-1(a), and therefore, it is part of plaintiffs’ New Jersey gross income.
Plaintiffs do not seriously deny that the contribution constitutes remuneration for services rendered, however, they contend that the contribution to Richard’s account should be excluded from their return for the year funded because (a) “Employer contributions to a Simplified Employee Pension should be given the same tax treatment afforded contributions to other types of deferred pension plans under N.J.S.A. 54A:6-10” thereby deferring their reportability to the year in which actual distribution is made; and, in the alternative, (b) the sums contributed to Richard’s SEP in 1982 were not actually or constructively received in their 1982 tax year because the account would have been subject to “substantial penalty” if withdrawn.
N.J.S.A. 54A:6-10 permits taxpayers to exclude certain receipts and distributions from their gross income. Pursuant thereto:
Gross income shall not include that part of any amount received as an annuity under an annuity, endowment or life insurance contract....
*616 [G]ross income shall not include payments ... which are received as an annuity, endowment or life insurance contract, or payments of any such amounts which are received as pension, disability or retirement benefits____
Gross income shall not include any amount received under any public or private plan by reason of ... disability
Gross income shall not include distributions from an employees' trust described in Section 401(a) of the 1954 Internal Revenue Code____
Plaintiffs allege that the above exclusions when considered together with N.J.S.A. 54A:5-1(j), which defines gross income to include:
Amounts distributed or withdrawn from an employee trust attributable to contributions to the trust which were excluded from gross income under the provisions of Chapter 6 of Title 54A of the New Jersey Statutes and pensions and annuities except to the extent of exclusions in § 54A:6-10 hereunder ...,
establishes an overall statutory scheme to tax employees on employer contributions to retirement plans only when the funds are actually received from the plan as provided under federal tax law. They further argue that this statutory scheme again is reflected in the Legislature’s subsequent adoption in 1983 of L. 1983, c. 571, § 2 effective January 1, 1984 (codified at N.J.S. A. 54A:6-21) which provides:
Gross income shall not include amounts contributed by an employer on behalf of and at the election of an employee to a trust which is part of a qualified cash or deferred arrangement which meets the requirements of Section 401(k) of the 1954 Internal Revenue Code as amended.
Although the federal taxing scheme as embodied in the code and New Jersey’s scheme as enacted are similar in many respects, there are many more differences. The federal tax is extremely comprehensive and exceptionally complex, whereas, New Jersey’s tax is a simplified tax imposed upon gross income as defined in the act less only those deductions specifically excluded or deferred therein by chapter 6. In determining the proper interpretation of a statute, the basic rule is that the statutory language should be given its ordinary meaning absent specific intent to the contrary. Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 182, 411 A.2d 704 (1980); *617 Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319, 325, 102 A.2d 372 (1954). When statutory language is plain, unambiguous and uncontrolled by another part of the act or other legislation, a court may not give it a different meaning. In re Jamesburg High School Closing, 83 N.J. 540, 547, 416 A.2d 896 (1980) (cited in Spiewak v. Rutherford Bd. of Ed., 90 N.J. 63, 74, 447 A.2d 140 (1982)). “To the extent that the legislative will is evident, it is our duty to follow it.” State v. Fearick, 69 N.J. 32, 37, 350 A.2d 227 (1976) (cited in Mortimer v. Bd. of Review, 99 N.J. 393, 401, 493 A.2d 1 (1985)).
The language of N.J.S.A. 54A:6-10 is plain and unambiguous. Excluded from gross income are portions of amounts received under an annuity, endowment or life insurance contract, certain sums received as pension disability or retirement benefits, and certain amounts representing distributions from an employee’s trust described in section 401(a) of the code. The contribution made to Richard’s SEP does not fall within any of the above exclusions. It was not received from any of the above-enumerated sources nor for the purposes set forth. The source of the payment was Richard’s employer and the sum contributed was payment to Richard as reimbursement for services rendered and not paid to him under any annuity, endowment or life insurance contract or as a pension, disability or retirement benefit. The source was not a distribution “from an employees’ trust described in Section 401(a) of the ... Code.” Plans permitted by the latter section are pension, profit sharing or stock bonus plans with a qualified cash or deferred arrangement component. An SEP plan does not come within this section.
A section 401(k) plan which is excluded from New Jersey gross income by N.J.S.A. 54A:6-21 is a qualified cash or deferred arrangement under section 401(a) of the code which permits contributions of the employee to be treated as contributions of the employer. It must, however, be part of a profit sharing or stock bonus plan which, in addition to meeting the general requirements of a qualified plan under section 401(a), *618 must meet the special qualification requirement set forth in section 401(k)(2), and (4) of the code. This plan must meet a comprehensive and detailed series of statutory rules concerning participation, vesting, discrimination, amounts of contribution and benefits, minimum funding standards and several other requirements not dictated under a SEP plan.
A SEP plan is not included within section 401(a) plans but instead it is one type of an individual retirement account (IRA) permitted under section 408 and it is less complex than a qualified retirement plan under section 401(k). In describing SEPs, Commerce Clearing House, Inc. in its 1983 U.S. Master Tax Guide set forth:
Simplified Employee Pensions. To help employers provide retirement benefits under an arrangement less complex than a qualified retirement plan, the law provides for simplified employee pension plans (SEPs) which utilize an increased deduction for contributions to an employee’s IRA by his employer____ Employer contributions to a SEP are included in the employee’s income. The employer may claim a deduction for contributions made to a SEP. Similarly, the employee may claim a deduction on Form 1040 for the amount of the contribution made by the employer subject to certain limits, [at 208, par. 590]
SEPs are described in section 408(k) of the code. In very general terms a SEP will permit employers to contribute up to $7,500, includable in the employee’s gross income, to the employee’s individual retirement account or annuity. There is not created thereby an employer IRA as described under section 408(c). Contributions may only be made to an employee’s IRA approved by the Internal Revenue Service. An employer may not enter into a SEP agreement with an employee unless all eligible employees have established an IRA. SEP contributions must be non-discriminatory and must be made to the SEP of each employee who (1) has reached age 21; (2) has performed services for the employer during at least three of the immediately preceding five years; and (3) received at least $300 in compensation from the employer for the year. From a review of the code it is apparent that the two plans, 401(k) and SEPs, are recognized as different compensation schemes, have different statutory requirements and operate under different standards.
*619 Additionally, because section 401(k) plans and SEP plans are clearly separate and distinct it is not logical, as proposed by plaintiffs, to interpret N.J.S.A. 54A:6-21 to reflect a legislative scheme to tax contributions to SEPs only when the funds are finally withdrawn. Contrarily, because of the clear distinction between the two sections, by explicitly limiting only section 401(k) contributions from gross income in the 1983 amendment, N.J.S.A. 54A:6-21, the Legislature clearly indicated its intent to limit that exclusion only to those plans. Had the Legislature intended to confer a similar benefit to SEP plans it could easily and effectively have done so by merely adding the words “Section 408(k) plans” to their 1983 amendment. I conclude that contributions to SEP plans are not excluded from gross income under chapter 6 of the act.
The next issue to be addressed is plaintiffs’ claim that the amount contributed to Richard’s SEP is not includable as gross income in 1982 because, being subjected to a 10% penalty for early withdrawal, it was not actually or constructively received. In order to determine when remunerative income is reported as received the act requires that a taxpayer’s accounting method be the same as his accounting method for federal income tax purposes. N.J.S.A. 54A:8-3(c). Both parties agree that plaintiffs are cash basis taxpayers. Under federal income tax accounting methods a cash basis taxpayer must report income in the taxable year in which it is received. Treas.Reg. § 1.451-1(a) (1957). Receipt may be actual or constructive. Treas.Reg. § 1.446—1(c)(1)(i) (1951); Smoyer v. Taxation Div. Dir., 4 N.J.Tax 42, 46 (Tax Ct.1982), aff’d 6 N.J.Tax 251 (App.Div.1982), aff’d 95 N.J. 139, 469 A.2d 920 (1983); McMenamy v. Taxation Div.Dir., 3 N.J.Tax 356, 361 (Tax Ct.1981), aff’d 6 N.J.Tax 250 (App.Div.1982), aff’d 95 N.J. 139, 469 A.2d 920 (1983).
In support of their position plaintiffs rely upon Smoyer and McMenamy, supra, and also Treas.Reg. § 1.451-2(a) which provides:
General rule. Income although not actually reduced to a taxpayer’s possession is constructively received by him in the taxable year during which it is *620 credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer’s control of its receipt is subject to substantial limitations or restrictions.
In Smoyer the taxpayer, after retirement, received a 1977 payment pursuant to a deferred compensation program. Prior to actually receiving payment, taxpayer had no right to receive or assign any sums represented by the deferred compensation certificates and had no right to transfer or negotiate these certificates. During his years of employment, taxpayer held certificates evidencing the company’s obligation to pay an indefinite sum which would be valued upon retirement. Because the certificates were nonnegotiable and nonassignable, they had no discountable value at the time they were given to taxpayer, and could only be valued and redeemed on retirement. Even after retirement, taxpayer had no right to demand payment of the deferred compensation except in accordance with the installment payment program. The installment payment schedule selected by the employer could not be altered or modified by taxpayer. There was no evidence that after retirement these payments could have been assigned or discounted by taxpayer. Based thereon, this court concluded that the taxpayer did not constructively receive the 1977 installment prior thereto because his rights were subject to substantial limitations and restrictions.
McMenamy involved a taxpayer who in 1973 was granted an option by his employer to purchase stock, however, under the terms of the plan he could exercise only one-third of the option after three years and thereafter only an additional one-third annually. The taxpayer exercised his option in December 1976 but claimed it was constructively received in 1973. This court held that income is earned only when it is ascertainable and since, prior to the exercise of the option, there was no taxable event which could reasonably specify what was earned by the taxpayer, the income was not received until the option was exercised.
*621 The impediment to ownership, restrictions in the accounts and the uncertainty of value existing in Smoyer and McMenamy are not present in a SEP plan. When the contribution in controversy was deposited to Richard’s SEP account in 1982, the employer effectively transferred to Richard all ownership of the funds, and thereafter, the employer had absolutely no control or claim whatsoever over this account. Immediately after deposit Richard had the unqualified legal right to, at any time, withdraw these funds merely by giving notice. Thereafter, all investments or withdrawals were strictly within the control of Richard. Contributions under an employer’s SEP plan may only be made to the employee and it must be 100% vested in the employee. The amount contributed belongs to the employee even after he separates from service with that employer. As in IRA’s generally, at no more frequently than one year intervals, the employee has the right to withdraw his funds and no more than 60 days later place them (rollover) in another SEP without penalty. Any amount withdrawn before attaining 59 V2 years, and not because of death or disability, may subject the employee to an imposition of an extra penalty tax of 10%. However, this option is strictly within the control of the employee and its existence does not in any way diminish the employee’s absolute ownership of the funds. Under the code, as it existed in 1982, the contributions made were subject to FICA tax and they were included in the employee’s gross income, however, the employer had the right to claim a deduction on his federal 1040 tax return for the amount contributed subject to certain limits.[2]
The fact that the taxpayer, by his employment contract, had no choice whether to participate in the plan does not prevent a finding that there has been actual receipt. In Miller v. Commissioner, 144 F.2d 287 (4th Cir.1944) the taxpayer was a civil *622 service employee who had an annual salary of $2,700. Of that amount $2,605.44 was paid in cash and the remainder was applied towards his retirement annuity. He was required to participate in the retirement program as a condition of his employment. In rejecting taxpayer’s argument that he had not received his full salary as income, the court explained:
When he was employed as a civil service employee he accepted such employment subject to all the conditions and provisions of law relating to civil service employees, one of which is that he shall be deemed to consent and agree that 3V2 per centum of his salary shall be deducted and be used to purchase the retirement benefits granted by the Act. That consent is as much a part of the conditions of his employment as any other provision of law relating thereto. The effect of his agreement is the same as if he had received his entire salary in cash, and then sent 3V2 per centum thereto to the Civil Service Commission for the purchase of the annuity provided by law. [Id. at 289]
It is unquestioned that a SEP account is a tremendous advantage to an employee. It is a permitted federal tax-deferred pension plan which is simple and convenient. It gives an employee the right to choose how his account is vested and affords an individual the flexibility to provide for his retirement years based upon his individual circumstances. Young employees may opt for equity commitments, whereas, employees approaching retirement may prefer to limit their investments to guaranteed income choices. By reason of the deferral granted from federal taxation, not only on the original earned income but also on the subsequently earned interest and dividends, it is an excellent method to increase retirement savings. The longer the taxpayer keeps the funds in the account the more he benefits tax-wise, and if they remain in the account for a sufficient period of time and are then withdrawn, the taxes saved will exceed the possible 10% penalty. Weighing the advantages received from ownership of an SEP account as compared to the possible loss by reason of a 10% penalty, I conclude that the benefits far outweigh the possible burdens. The limitation imposed on an SEP account is not a sufficiently substantial restriction to overcome a determination that the taxpayer has actually, or constructively, received the contribution when made.
*623 Accordingly, it is concluded that the amounts contributed by Richard’s employer to his IRA account in the 1982 tax year must be included in plaintiffs’ gross income for that time period. The Clerk of the Tax Court is directed to enter judgment dismissing plaintiffs’ appeal.

The Division also made a determination concerning personal exemptions but that determination was not appealed.

The Internal Revenue Code of 1954 has since been amended by the Tax Reform Act of 1986 to convert section 408(k) plan contributions from a deduction to an exclusion from gross income effective January 1, 1987. P.L. 99-514.