KUSKIN, J.T.C.
Plaintiffs, John and Barbara Reck, appeal the disallowance by defendant, Director of the New Jersey Division of Taxation (“Director”), of the following deductions taken by them on their 1992 and 1993 New Jersey gross income tax returns in calculating Mr. Reek’s distributive share of partnership income: a) the deduction of payments made on Mr. Reek’s behalf, by the partnership of which he was a member, to the partnership’s Keogh Plan; and b) *600 the deduction of payments by the partnership of interest on loans negotiated for Mr. Reck by the partnership, the proceeds of which were contributed to the partnership as Mr. Reek’s capital account. The parties have submitted the matter for decision based on stipulated facts.
I.
Facts
Plaintiffs are husband and wife, residing in Holmdel, New Jersey. For the years 1992 and 1993, they filed joint gross income tax returns. Mr. Reck is, and was during 1992 and 1993, a partner in the firm of Ernst & Young, LLP (“Ernst & Young”), having a less than one percent interest in partnership profits, losses, and capital. Ernst & Young has approximately 2,020 partners. In calculating Mr. Reek’s distributive share of partnership income from Ernst & Young for the years 1992 and 1993, plaintiffs deducted the contributions made on his behalf for each year by Ernst & Young to the Ernst & Young Partnership Retirement Plan (the “EY Keogh Plan”) and to the Ernst & Young Retirement Savings Plan (the “EY 401(k) Plan”).
The EY Keogh Plan was a qualified pension plan under I.R.C. § 401(a). This section was amended by P.L. 87-792, the Self-Employed Individuals Tax Retirement Act of 1961, sponsored by Congressman Keogh, to permit self-employed individuals to be covered by qualified plans. Participation in the EY Keogh Plan was mandatory for all eligible partners. The Plan provided that Ernst & Young would, to the extent permitted by law, contribute to the Plan for each year “such amount of its net earnings for such taxable year, if any, as Ernst & Young may fix, either by amount, percentage or other formula ....”
The EY 401(k) Plan was a qualified pension plan under I.R.C. § 401(k). Internal Revenue Code § 401(k)(2)(A) defines a qualified plan as one “under which a covered employee may elect to have the employer make payments as contributions to a trust under the plan on behalf of the employee, or to the employee *601 directly in cash.” Under the EY 401(k) Plan, an employee or partner of Ernst & Young had the right to elect to have Ernst & Young make contributions for him or her in amounts up to twenty percent of the employee’s or partner’s compensation. With respect to a partner, the percentage was applied to all of the partner’s net earnings from the partnership which constituted earned income under I.R.C. § 401(c)(2). Contributions on behalf of an employee were made by payroll deduction, and contributions on behalf of a partner were withheld from distributions to the partner. An employee or partner had the right to suspend his or her contributions at any time, and then reinstitute the contributions.
In addition to his participation in the partnership’s pension plans, Mr. Reck participated in the Ernst & Young, LLP Capital Loan Program under which partners were able to borrow their initial and subsequent capital contributions from banks on terms negotiated by Ernst & Young. The promissory note in connection with a loan under the Capital Loan Program was signed by the partner, but the loan was to be paid in accordance with a certain Administrative Servicing Agreement between Ernst & Young and the banks. This Agreement set forth the term for repayment of principal and provided that Ernst & Young select the applicable interest rate. By signing the promissory note, the individual partner accepted and adopted the repayment term and interest rate selected by Ernst & Young pursuant to the Administrative Servicing Agreement. The Agreement provided that loans to a partner were to be used solely for the purpose of making the partner’s initial capital contribution to Ernst & Young or any additional contribution required by the partnership, or for purposes of carrying and maintaining, or increasing, the partner’s capital account.
The Administrative Servicing Agreement obligated Ernst & Young to deduct from a partner’s capital account or partnership profit distribution amounts equal to the payments of principal and interest due to the lender from time to time in accordance with the partner’s promissory note. In the event of the death, resignation, retirement, termination, or other event resulting in the withdrawal *602 of a partner from Ernst & Young, the partnership was obligated, under the Administrative Servicing Agreement, to withdraw from the partner’s capital account an amount equal to all amounts owing to the lender for principal and interest on the partner’s loan. The Agreement limited capital distributions to partners and required Ernst & Young to maintain with the lenders a cash collateral account equal to five percent of all outstanding loans to partners. The lenders had recourse to this account in the event of a partner default.
The proceeds of the loans obtained by Mr. Reck under the Ernst & Young Capital Loan Program were used by Ernst & Young, together with capital contributed by other partners, in the conduct of the partnership’s professional accounting and consulting practice to provide funds for working capital and capital investment. In calculating Mr. Reek’s distributive share of partnership income for the years 1992 and 1993, plaintiffs deducted interest payments with respect to these loans made by Ernst & Young on Mr. Reek’s behalf.
Upon audits of plaintiffs’ 1992 and 1993 tax returns, the Director disallowed deductions from Mr. Reek’s distributive share of partnership income of the contributions by Ernst & Young to the EY Keogh Plan and to the EY 401(k) Plan, and disallowed deductions of the. payments of interest with respect to the loan used for Mr. Reek’s capital contribution. The Director also disallowed other deductions, but the parties have resolved them dispute as -to these deductions which are not at issue in this appeal. After administrative hearings requested by plaintiffs, the Director issued Final Determinations which disallowed the deduction -of capital loan interest and contributions to the EY Keogh Plan but allowed the deduction of the contributions to the EY 401(k) Plan.
II.
Keogh Plan Contributions
The Gross Income Tax Act, N.J.S.A. 54A:1-1 to : 10-12, provides that an individual’s gross income includes his or her “[distributive *603 share of partnership income.” N.J.S.A. 54A:5-1k. This share is calculated in the same manner as net profits from business under N.J.S.A. 54A:5-1b. Smith v. Director, Div. of Taxation, 108 N.J. 19, 28, 527 A.2d 843 (1987); N.J.A.C. 18:35-1.3(c)(1) (which replaced N.J.A.C. 18:85-1.14(c)(3) as part of the recodification and revision of the regulations discussed below). The Act defines “[n]et profits from business” as follows:
Tiie net income from the operation of a business, profession or other activity after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of the amount of:
1) taxes based on income;
2) a civil, civil administrative, or criminal penalty or fine, ..; and
8) treble damages paid to the Department of Environmental Protection----
[N.J.S.A. 54A:5-1b.]
The reference in N.J.S.A. 54A:5-1b to “the method of accounting allowed for federal income tax purposes” is similar to that contained in N.J.S.A. 54A:8-3(c) which provides that “[a] taxpayer’s accounting method under [the Gross Income Tax Act] shall be the same as his accounting method for Federal income tax purposes .”
The Gross Income Tax Act contains no provisions expressly and specifically relating to the treatment of pension and profit sharing plans other than N.J.S.A. 54A:6-21, entitled “Contributions to certain employee trusts,” which provides as follows:
Gross income shall not include amounts contributed by an employer on behalf of and at the election of an employee to a trust which is part of a qualified cash or deferred arrangement which meets the requirements of section 401 (k) of the 1954 Internal Revenue Code, as amended.
Pursuant to N.J.S.A. 54A:9-17(a), the Director promulgated regulations interpreting some of the foregoing statutory provisions. The regulations in effect for the tax years 1992 and 1993 contained no provisions relating to contributions to Section 401(k) Plans but provided as follows with respect to Keogh Plans:
1. Partnership contributions to a Keogh Plan made on behalf of employees of the partnership and which are deductible as ordinary and necessary business expenses for Federal income tax purposes also shall be deductible for New Jersey Gross Income Tax purposes in determining the net income of the partnership. The employees on whose behalf such contributions were made are not subject to gross income tax on the amounts contributed in the taxable year in which they are *604 contributed to the Keogh Plan, unless withdrawn in such taxable year by the employees from the Plan. The employees are not considered to have actually or constructively received the contributions at the time they were made to the Keogh Plan. When an employee makes a withdrawal from the Keogh Plan, both the untaxed employer contribution and accumulated interest earned thereon are taxable to the employee.
2. Partnership contributions to a Keogh Plan on behalf of a partner are not deductible business expenses. Such contributions are to be taken into account in determining the distributive shares of partnership income of the individual partners for New Jersey gross income tax purposes in the taxable years in which they are contributed to the Keogh Plan. Previously taxed employer contributions to a Keogh Plan are not subject to tax when subsequently withdrawn by the partners.
[N.J.A.C. 18:35—1.14(h)(1) and (2) (emphasis added).]
The regulations then contained an example which illustrated the distinction between partnership Keogh Plan contributions for employees and contributions for partners. N.J.A.C. 18:35-1.14(h)(4), Example 2.
On April 20, 1998 the Director recodified his Gross Income Tax Act regulations, so that N.J.A.C. 18:35-1.25 became N.J.A.C. 18:35-1.1, and N.J.A.C. 18:35-1.14 became N.J.A.C. 18:35-1.3. On September 21, 1998 the Director proposed major revisions to the recodified N.J.A.C. 18:35 1 and-1.3.
The Division proposes to repeal and replace N.J.A.C. 18:35-1 .1, Net profits from business, and 1.3, Partnerships and partners, with new rules addressing the treatment of net profits from business under N.J.S.A. 54A:5-1(b) and partners and partnerships under N.J.S.A 54A:5-1(k). The proposed new rules are intended to simplify income reporting. The rules address controversies which have existed since the enactment of the Gross Income Tax Act surrounding the proper interpretation of these sections, and resolve those controversies in a manner that will benefit most taxpayers. The proposed rules are consistent with the ruling of the New Jersey Supreme Court in Smith v. Director, Division of Taxation, 108 N.J. 19, 527 A.2d 843 (1987), and the Appellate Division decision in Sabino v. Director, Division of Taxation, 296 N.J.Super., 269, 686 A.2d 1197 (App.Div.1996), reversing and remanding 14 N.J.Tax 501 (Tax Ct.1995).
The proposed [N.J.A.C. 18:35-1.1] defines deductible ordinary business costs or expenses. Business costs and expenses are deductible as long as they meet all four of the following: (1) incurred primarily and directly in the pursuit of the business’s income; (2) incurred as a common and accepted practice in that field of business; (3) required for and appropriate to the intended business purpose; and (4) reasonable in amount in relation to the intended business purpose. An expenditure that does not meet all four of these criteria is not deductible in determining net profits from business. Costs and expenses incurred by the business that meet this standard are deductible business expenses.
*605 The proposed new rule represents the Director’s attempt to explicate and interpret the New Jersey’s Supreme Court holding in Smith, supra, that only ordinary expenses [sic] are deductible, as reiterated by the Appellate Division in Sabino, supra. The Rule still incoiporates the overall methods of accounting allowed for Federal income tax purposes. However, the Division is not adopting all specific Federal income tax rules regarding deductible business costs and expenses. Rather, Federal principies and the results of State experience inform the substance of the four-part standard. While the proposed new rule does not incorporate the specific provisions for deductibility under Internal Revenue Code Section 162, it follows the Code’s underlying logic.
[30 N.J.R. 3377(b), 3378.]
Under the Internal Revenue Code, an employee is not required to include employer contributions to qualified pension plans as income to the employee until the employee receives distributions from the plan. I.R.C. § 402(a); Treas. Reg. § 1.402(a)-l(a)(l)(i). The contributions are deductible by the employer provided they are ordinary and necessary business expenses deductible under I.R.C. § 162. I.R.C. § 404(a)(1); Treats. Reg. §. 1.404(a)-l(b). A partner constitutes an “employee” for purposes of determining the federal tax treatment of contributions to qualified pension plans. I.R.C. §§ 401(c)(1)(A) and 1402(a).
The Director’s proposed regulations included the following provision, adopted from previous regulations, setting forth the nondeductibility of contributions on behalf of partners to partnership Keogh Plans:
A partner’s contributions to the partnership’s qualified Keogh plan under the Internal Revenue Code are not deductible business expenses under the standard provided in N.J.A.C. 18:35 — 1.1(d), consistent with (c)(1) above. Such contributions are included in the participating partner’s distributive share of partnership income reported for New Jersey gross income tax purposes. Previously taxed contributions to a Keogh Plan are not subject to tax when subsequently withdrawn by the partners.
[Proposed N.J.A.C. 18:35-1.3(d)(3); 30 N.J.R. 3377(b), 3384 (Sept. 21, 1998).]
The proposed regulations also expanded the definition of deductible partnership contributions to pension plans on behalf of employees so as to include plans in addition to Keogh Plans.
Partnership contributions to a qualified pension plan under the Internal Revenue Code made on behalf of employees of the partnership and deductible as business expenses for Federal income tax purposes also are deductible under N.J.A.C. 18:35-1.1(d), consistent with (c)l above, in determining the net income of the partnership.
*606 [Proposed N.J.A.C. 18:35-1.3(c)(5); 30 N.J.R. 3377(b), 3384 (Sept. 21, 1998).]
A comment to the proposed regulations requested that N.J.A.C. 18:35-1.3 “be clarified by specifying that payments to a 401(k) plan, on behalf of a partner, reduce the partner’s distributable share of profit.” 31 N.J.R. 779(a). In response to this comment, the Director stated: “Amounts contributed to a qualified Federal Internal Revenue Code section 401(k) plan are provided tax deferred treatment under N.J.S.A. 54A:6-21. For purposes of clarification, as requested, the Division is adding a paragraph to N.J.A.C. 18:35-1.3(d) to affirm that a partner’s qualified payments to an I.R.C. section 401(k) plan are deductible, as provided under N.J.S.A. 54A:6-21.” Ibid. The paragraph to which the Director referred was incorporated in the regulations, as formally adopted on February 18, 1999, as N.J.A.C. 18:35 — 1.3(d)(3). The proposed N.J.A.C. 18:35-1.3(d)(3), relating to Keogh- plan contributions, became paragraph (4).
Plaintiffs contend that contributions by Ernst & Young to the EY Keogh Plan constituted ordinary business expenses which should be deductible in calculating Mr. Reek’s share of partnership income. Plaintiffs base them contentions on the following analysis of the foregoing statutes and regulations:
1) contributions to Keogh Plans and contributions to Section 401(k) Plans are deductible for federal income tax purposes;
2) N.J.S.A. 54A:6-21 permits the deduction of Section 401(10 contributions for employees in determining a partnership’s net income but does not expressly permit deductibility of contributions for partners;
3) the Director has interpreted N.J.S.A. 54A:6-21 as permitting deductibility of Section 401 (k) contributions on behalf of partners, and, therefore, the Director has adopted the federal method of accounting for such contributions by treating partners as employees;
4) the Director has long recognized that partnership contributions to a Keogh Plan on behalf of employees are deductible ordinary business expenses;
5) in adopting the federal accounting method of treating partners as employees, the Director correctly interpreted and applied the reference to “the method of accounting allowed for federal income tax purposes” in the definition of “net profits from business” in N.J.S.A. 54A:5-1b;
6) having recognized contributions to Keogh Plans for employees as ordinary business expenses, and having accepted the Internal Revenue Code definition of partners as employees, the Director has no basis for disallowing the deductibility of Keogh Plan contributions on behalf of partners.
*607 The Director responds that his long-standing policy and statutory interpretation, set forth by regulation since 1981, 13 N.J.R. 111(d), has denied deductibility to Keogh Plan contributions for partners. He contends that such contributions are not ordinary business expenses under the four-part test incorporated in the 1999 regulations or under prior definitions of ordinary business expenses. He explains that he has permitted deduction of contributions for partners to Section 401(k) Plans because doing so is consistent with the policy reflected in N.J.S.A. 54A:6-21, even though partners are not “employees” of the partnership.
The Director’s interpretation of the Gross Income Tax Act is entitled to great weight from the court, but is not conclusive.
New Jersey courts generally defer to the interpretation that an agency gives to a statute that agency is charged with enforcing. Smith v. Director, Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987). We have recognized the Director’s expertise, particularly in specialized and complex areas of the [Gross Income Tax] Act. Metromedia, Inc. v. Director, Div. of Taxation, 97 N .J. 313, 327, 478 A.2d 742 (1984) (stating that Director’s interpretation will prevail “as long as it is not plainly unreasonable”). However, this deference is “not total, as the courts remain the Tmal authorities’ on issues of statutory construction and are not obliged to ‘stamp’ their appi’oval of the administrative interpretation.” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978).
[Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999).]
As set forth above, the Director has for many years consistently interpreted the Gross Income Tax Act provisions as precluding deduction of partnership contributions to Keogh Plans on behalf of partners for purposes of determining a partner’s distributive share of partnership income. Prior to his 1999 regulations, the Director had not promulgated any regulation with respect to the deductibility of 1) partnership contributions to Section 401(k) Plans on behalf of partners, 2) partnership contributions to pension plans, other than Keogh Plans, on behalf of employees, or 3) corporate contributions to pension plans on behalf of employees. In the absence of such rules or regulations, the Tax Court held that a corporation’s contribution on behalf of an employee to a simplified employee pension plan under I.R.C. § 408(k) was not deductible in determining the employee’s Gross Income Tax liability. Mutch v. Division of Taxation, 9 N.J.Tax 612 (Tax 1988), affd o.b., 11 *608 N.J.Tax 87 (App.Div.1989). The court relied on the provisions of N.J.S.A 54A:6-21 which referred specifically to Section 401(k) Plans and to no others. The court noted that a simplified employee pension plan was different from a Section 401(k) Plan and set forth the differences between the two. types of plans.
[B]ecause of the clear distinction between [SEP Plans and Section 401(k) Plans], by explicitly [excluding] only section 401(k) contributions from gross income in the 1983 amendment, N.J.S.A. 54A:6-21, the Legislature clearly indicated its intent to limit that exclusion only to those plans. Had the Legislature intended to confer a similar benefit to SEP Plans it could easily and effectively have done so by merely adding the words “Section 408(k) Plans” to [the] 1983 amendment.
[Id. at 619.]
The analysis in Mutch was followed by the Tax Court without discussion in Dantzler v. Director, Div. of Taxation, 18 N.J.Tax 490, 500-02 (Tax 1999).
The scope of the reference in N.J.S.A. 54A:5-lb, and elsewhere in the Gross Income Tax Act, to “the method of accounting allowed for federal income tax purposes” has been delineated in a variety of contexts. In Baldwin v. Director, Div. of Taxation, 10 N.J.Tax 273 (Tax 1988), aff’d o.b. 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990), the Tax Court held that, as used in N.J.S.A. 54A:5-1c, the phrase “was intended to include any method or system as used for federal tax purposes ‘by which taxpayers determine the amount of them income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.’ ” Id. at 284. The court analyzed the language of N.J.S.A. 54A:5-1b as confirming that the reference to “the method of accounting allowed for federal income tax purposes” was not limited to a cash or accrual basis, because, if the reference were so limited, the words “cash or accrual basis” would be superfluous. Because for federal income tax purposes, a loss incurred by the taxpayer in the sale of a lawn mower was a nondeductible personal loss, the court held that, under N.J.S.A. 54A:5-1c, the loss could not be offset against a gain from the sale of property.
In DuBois v. Director, Div. of Taxation, 4 N.J.Tax 11 (Tax 1981), aff’d o.b. 6 N.J.Tax 249 (App.Div.1982), aff’d, 95 N.J. 234, 470 A.2d 446 (1983), the Tax Court interpreted the reference to the “accounting method for federal income tax purposes” in *609 N.J.S.A. 54A:8-3(c) as incorporating the installment sale method of reporting gain on the sale of property contained in I.R.C. § 453 and held as follows:
By defining the items which constitute gross income and directing that federal income tax accounting methods be applied, the Legislature has accepted all accounting methods recognized by the Code and the Regulations. It is obvious that the Legislature’s purpose was to adopt a simple procedure for the determination and timing of income and deductions, in accordance with federal income tax accounting principles. Therefore, for New Jersey Gross Income Tax returns, a federal cash-basis taxpayer reports bis income as “earned” upon actual or constructive receipt; a federal accrual-basis taxpayer reports income as “earned” when all events have occurred which fix the taxpayer’s right to the income and the amount thereof is determinable with reasonable accuracy; and a taxpayer who has a gain from an installment sale which he federally reported under the installment method, includes the proportionate gain as “earned” upon receipt of the installment payment. Hence, “earned” income as used in the act means income as determined by a taxpayer’s recognized accounting method adopted by him for federal income tax purposes.
[Id. at 23.]
In Koch v. Director, Div. of Taxation, supra, 157 N.J. 1, 722 A.2d 918, the Supreme Court reviewed the decisional law, including Baldwin and DuBois, relating to what was encompassed by references in the Gross Income Tax Act to federal methods of accounting. The Court approved the holding in Baldwin and reiterated the conclusion in Smith v. Director, Div. of Taxation, supra, 108 N.J. at 33, 527 A.2d 843, that, “when the Legislature included references to federal methods of accounting or nonrecognition provisions of the Internal Revenue Code, ‘it [explicitly] intended to incorporate federal income tax concepts.’ ” Koch, supra at 10, 722 A.2d 918 (citation omitted).[1] The Court concluded that this method of determining gain or loss on the sale of a partnership interest was applicable under the Gross Income Tax Act, and that, under this method, losses not passed through to a *610 partner would not reduce the partner’s basis in his partnership interest. Id. at 11, 722 A.2d 918.
Based on the foregoing decisions, and the statutory analysis set forth below, I hold that contributions by Ernst & Young on behalf of Mr. Reck to the EY Keogh Plan are deductible in calculating Mr. Reek’s distributive share of partnership income under N.J.S.A. 54A:5-1b. I recognize that my holding is contrary to the Director’s long-standing interpretation of the statutory provisions, but I conclude that the Director has misinterpreted the applicable statutes and has improperly failed to apply federal income tax methods of accounting. In addition, internal inconsistencies in the Director’s 1999 regulations, which represent the Director's most recent understanding of the proper interpretation of the statutes, as well as inconsistencies between those regulations and positions taken by the Director in other litigation, erode the authoritativeness of the statutory interpretation reflected in the regulations. I also recognize that my holding is inconsistent with Mutch v. Division of Taxation, supra, 9 N.J.Tax 612. I conclude, however, that, in Koch v. Director, Div. of Taxation, supra, 157 N.J. 1, 722 A.2d 918, the Supreme Court recognized that the Gross Income Tax Act incorporates federal tax concepts and principles to an extent far greater than expressly or impliedly recognized in Mutch. As a result, Koch has undermined the precedential status of Mutch.
The Director contends that Keogh Plan contributions must be taxable because, if not, the amounts contributed would totally escape taxation under the Gross Income Tax Act. The Director cites N.J.S.A. 54A:6-10 in support of this contention, asserting that this statute excludes Keogh Plan distributions from taxation. Prior to amendment by L. 1999, c. 177,[2] the applicable portion of N.J.S.A. 54A:6-10 provided as follows:
*611 In addition to that part of any amount received as an annuity which is excludable from gross income as herein provided, gross income shall not include payments of up to $10,000.00 for a married couple filing jointly, $5,000.00 for a married person filing separately, or $7,500,00 for an individual filing as a single taxpayer ... which are received as an annuity, endowment or life insurance contract, or payments of any such amounts which are received as pension, disability, or retirement benefits, under any public or private plan, whether the consideration therefor is contributed by the employee or employer or both, by any person who is 62 years of age or older or who, by virtue of disability, is or would be eligible to receive payments under the federal Social Security Act.
The statutory language does not support the Director’s contention. In referring to the receipt of pension benefits by persons age 62 or older, the statute’s focus is on pension plan distributions, not contributions. The statute does not exclude all pension plan distributions from taxation; only the amounts specified are excluded. Such specific statutory exclusion is meaningful only if pension plan distributions are otherwise taxable. If distributions from pension plans are taxable (subject to the statutory exclusion), then taxing contributions to the plans would (1) contravene the exclusion and (2) result in double taxation of the portion of the contributions not excluded from taxation upon distribution. Duplicate imposition on the same person of the same tax on the same income is prohibited. Cf. Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 590 (Tax 1997). This analysis demonstrates that N.J.S.A. 54A:6-10 expresses a legislative determination and intent that the gross income tax does not apply to ccmtributions to pension plans, including Keogh Plans, whether made on behalf of employees or partners. Only non-excluded distributions from the plans are taxable.
The language of N.J.S.A. 54A:5-1j, which defines one category of gross income subject to tax under the Gross Income Tax Act, supports the foregoing interpretation of N.J.S.A. 54A:6-10. Before amendment by L. 1977, c. 40 (the enactment of Senate Bill 1709), N.J.S.A. 54A:5-1j included in gross income “[pjensions and annuities to the extent that the proceeds exceed the contributions by the taxpayer.” The amendment, which also enacted the portion of N.J.S.A. 54A:6-10 quoted above, changed the definition to:
*612 [pensions and annuities except to the extent of exclusions in section 54A:6-10 hereunder, notwithstanding the provisions of [various statutes excluding public pensions from taxation].
This new definition expanded the taxability of pensions beyond proceeds hi excess of contributions. However, by including a reference to the exclusions provided by N.J.S.A. 54A:6-10, the Legislature indicated that proceeds (that is, distributions), not contributions, remained the subject of taxation. The current version of N.J.S.A. 54A:5-1j was enacted by L. 1983, c. 571, which also enacted N.J.S.A. 54A:6-21, the statute providing that Section 401(k) Plan contributions for employees are not included in the employees’ gross income. In order to coordinate the definition of gross income in N.J.S.A. 54A:5-1j with N.J.S.A. 54A:6-21, the definition was amended to read as follows:
Amounts distributed or withdrawn from an employee trust attributable to contributions to the trust which were excluded from gx-oss income under the provisions of Chapter 6 of Title 54A of the New Jersey Statutes and pensions and annuities except to the extent of exclusions in section 54A: 6-10 hereunder, notwithstanding the provisions of [various statutes excluding public pensions from taxation.]
[N.J.S.A. 54A:5-1j.]
This statute was further amended by L. 1998, c. 57, § 1 to include monies rolled over from an IRA to a Roth IRA. A rollover from a non-Roth IRA to a Roth IRA is a form of distribution. This amendment, therefore, when considered in conjunction with the references in the statute to the exclusions provided by N.J.S.A. 54A:6-10, confirms that the amended versions of N.J.S.A. 54A:5-1j refer to distributions of pension monies, not contributions.
None of the amended versions of N.J.S.A. 54A:5-lj incorporates the distinction made by the Director between distributions to employees and distributions to partners. As a result, the Director’s regulations, providing that the gross .income tax treatment of Keogh Plan contributions for (and distributions to) employees is different from the treatment of contributions for (and distributions to) partners, derive no support from this statutory provision.
An examination of additional legislative and non-legislative history relating to N.J.S.A. 54A:6-10 and N.J.S.A 54A:5-1j confirms the foregoing analysis. As noted above, the paragraph in N.J.S.A. 54A:6-10 excluding from taxation specified amounts of pension *613 distributions, was added by L. 1977, c. 40, enacting Senate Bill 1709. That S. 1709 was intended to tax pension plan distributions and not contributions is evident not only from the language of the Bill, but also from the Sponsor and Senate Revenue, Finance and Appropriations Committee Statements. The Sponsor Statement read, in its entirety, as follows:
This bill would exclude from gross income under the New Jersey Gross Income Tax Act amounts of State aid private plan pension benefits or annuities to the extent of $10,000.00. This would subject such benefits over $10,000.00, whether the consideration therefor is contributed by the employee or employer or both, to taxation under the act.
[Sponsor’s Statement, Senate Bill 1709 (Jan. 24,1977)]
The Senate Committee Statement included the following paragraph which explained the calculation of the exclusions from income permitted under the portion of N.J.S.A. 54A:6-10 quoted above:
To calculate the amount of pension income which is taxable, the amount of Social Security, or equivalent amount where the taxpayer is not eligible for Social Security, together with the amount representing return of investment, is subtracted from total pension income and the result is the amount of pension income which is taxable. To that deduction is added the $2,000.00 personal deduction for each taxpayer 65 or older. It is estimated that the aggregate exclusion has the effect of excluding the first $8,000.00/10,000.00 in pension income from the State income tax. This is viewed by the committee as a reasonable exclusion and will render most pension payments received by the average New Jersey citizen nontaxable.
[Senate Revenue, Finance and Appropriations Committees, Committee Statement to Senate Bill 1709 (Jan. 24,1977) ]
A further amendment to N.J.S.A. 54A:10-6, effected by L. 1979, c. 79 enacting Assembly Bill 1771, further demonstrates that the Legislature contemplated and intended that only distributions from pension plans are to be subjected to gross income tax. This amendment excluded from taxation a distribution from an employee’s trust described in I.R.C. § 401(a), and exempt from tax under I.R.C. § 501(a), if the distribution was rolled over into an Individual Retirement Account. Both the Sponsor Statement and Senate Revenue, Finance and Appropriations Committee Statement to A. 1771 confirm that the Bill was intended to restrict the applicability of the gross income tax in accordance with the Internal Revenue Code. These Statements reflect the continuing effort by the Legislature to conform taxation of pension plans under the Gross *614 Income Tax Act to federal income tax law. The text of the amendment reflects the Legislature's concern that, if a rollover is not excluded from taxation, the pension plan distribution would otherwise be taxable. In order to avoid prohibited double taxation, the distribution could be taxable only if the contribution was not. Thus, the amendment supports the conclusion that only pension plan distributions, and not pension plan- contributions, are subject to gross income tax.
Statements by the Director appearing in New Jersey State Tax News are consistent wdth the preceding analysis, although inconsistent with the position the Director now asserts. One court described this publication as neither an authoritative pronouncement nor having the binding effect of a statute or regulation, Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 480, 712 A.2d 229 (App.Div.1998), but another' court characterized State Tax News as “an official publication” which could provide grounds for estoppel or other equitable relief against the Director. Toys "R" Us, Inc. v. Director, N.J. Div. of Taxation, 300 N.J.Super. 163, 173, 692 A.2d 111 (App.Div.1997). See also, Media Graphics, Inc. v. Director, Div. of Taxation, 7 N.J.Tax 23 (Tax 1984), aff’d, 8 N.J.Tax 321 (App.Div.1986) (holding that a statement by the Director in State Tax News “was sufficiently misleading ... to warrant the abatement of interest and penalty.” Id. at 34).
The Director used State Tax News to publish his determination as to the taxability of contributions to Section 401(k) Plans. In the March/April 1983 issue, the Director re-stated his position, originally set forth in the November/December 1982 issue, that any amounts .an employee elects to have an employer contribute to a Section 401(k) Plan constitute income to the employee when contributed. The Director emphasized the significance of the elective'feature of such contributions by stating as follows with respect to non-elective contributions:
However, any actual matching- contributions made by the employer for the employee would be treated in the same manner as such contributions are treated for federal income tax purposes, provided the employee cannot elect to receive such contributions in cash. ,
[12 New Jersey State Tax News 42 (March/April 1983).]
*615 In 1982 and 1983, elective contributions by employees to Section 401(k) Plans were not taxable for federal income tax purposes, and the federal law has not changed.
The Legislature overruled the Director’s position by enacting, as L. 1983, c. 571, Assembly Bill 3251. As discussed above, this legislation added the provisions codified as N.J.S.A. 54:6-21, and amended the language of N.J.S.A 54A:5-1j. The Sponsor Statement to A. 3251 stated:
Section 401(k) of the Internal Revenue Code was enacted to encourage employees to save for their retirement. Under this, a worker can agree to contribute a portion of his income into an employer sponsored plan. The employee contributions as well as the interest and earnings are not subject to federal income tax until the employee begins receiving the income, generally after retirement.
All states except New Jersey and Pennsylvania have conformed their state laws to follow the federal law in allowing tax-deferment for Section 401(k) plans. This bill will bring New Jersey’s law into conformity with the Federal tax law.
The Statements by the Assembly and Senate Revenue, Finance and Appropriations Committees both describe the Bill as conforming gross income tax treatment of contributions to Section 401(k) Plans to the treatment accorded such contributions under the Internal Revenue Code. The Committee Statements also reflect a determination, similar to that articulated by the Director, that Section 401 (k) Plans are different from other pension plans because of the elective nature of employee contributions.
The specific reference in N.J.S.A. 54A:6-21 to contributions to Section 401(k) Plans “on behalf of and at the election of’ an employee, therefore, appears to have been a legislative response to a specific position taken by the Director. In the same State Tax News statement that set forth this position, the Director indicated that non-elective pension plan contributions would be treated under the Gross Income Tax Act in the same manner as they were treated for federal income tax purposes, that is, not subject to tax. Consequently, the Legislature reasonably could have concluded that legislative action was not necessaiy in order to insure the applicability of federal income tax treatment to other pension plan contributions. When considered in this context, the absence of any reference in N.J.S.A. 54A:6-21 to other types of pension plans does not constitute an implied legislative determination that con *616 tributions to other plans are taxable, or an implied legislative acceptance of the Director’s regulations with respect to Keogh Plans. See Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 526 A.2d 1029 (1987), aff’d 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (finding that “the doctrine of probable legislative intent [is] a more reliable guide than the so-called doctrine of legislative inaction” and noting that legislative silence is a “ ‘weak reed upon which to lean’ and a ‘poor beacon to follow’ in construing a statute.” Id. at 322, 526 A.2d 1029 (citation omitted).) See also, Johnson v. Transportation Agency, Santa Clara County, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) where Justice Scalia, dissenting, commented that, in evaluating congressional silence, it is
impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice.
[Id. 480 U.S. at 672, 107 S.Ct. at 1472, 94 L.Ed.2d at 656 (quoted in Amerada Hess Corp., supra, at 323, 526 A.2d 1029).]
The Director has characterized a contribution to a Keogh Plan on behalf of a partner as merely a shifting of money from the collective partnership pocket to the individual partner’s pocket. From this, the Director concludes that a Keogh Plan contribution is merely an aspect of the partner’s overall compensation. The Director’s argument is unconvincing. His characterization of Keogh Plan contributions for partners is equally applicable to Section 401(k) Plan contributions for partners which the Director has determined to be deductible. Furthermore, the Director’s argument skirts the underlying issue as to contributions to either Plan. That issue is the timing of a partner’s recognition of income — whether the pension plan monies are taxable when contributed or when distributed (subject to statutory exclusions). The taxability of the monies, at one time or the other, is not in dispute. Both DuBois v. Director, Div. of Taxation, supra, 4 N.J.Tax 11, and Koch v. Director, Div. of Taxation, supra, 157 N.J. 1, 722 A.2d 918, have held that the timing of income recognition is to be determined using the methods applicable for federal income tax purposes. The Director has agreed in the context of *617 interpreting the reference to federal methods of accounting in N.J.S.A. 54A:8-3(c).
A taxpayer’s method of accounting for Federal income tax purposes determines not only the method to be used to compute income but also determines when income is to be recognized for Gross Income Tax purposes, unless otherwise provided for in the Act or under Regulations. Thus, in most instances, a taxpayer will recognize and report income for Gross Income Tax purposes in the same period as he does for Federal income tax purposes.
[27 New Jersey State Tax News 11 (4 Winter 1998).]
In the quotation set forth above containing the Director’s comments on the proposed substantial revision in 1998 of N.J.A.C. 18:35-1.1 and -1.3, 30 N.J.R. 3377(b), 3384, the Director described his revised definition of deductible business costs and expenses as incorporating the “overall methods of accounting allowed for federal income tax purposes” and as following the Internal Revenue Code’s “underlying logic,” although he cautioned that the Division of Taxation was not “adopting all specific federal income tax rules regarding deductible business costs and expenses.” Ibid. Under the Internal Revenue Code, contributions to qualified pension plans for employees and partners are not taxable, and are deductible business expenses. I.R.C. § 404(a)(8)(C). Recognition of income by the partner or employee is deferred until the pension monies are distributed. Based on the above statutory analysis, decisional law, and the Director’s explanations, the federal method of accounting, relating to the timing of income recognition, is applicable under the Gross Income Tax Act to Keogh Plan contributions for partners. Accordingly, those contributions are deductible in calculating a partner’s distributive share of partnership income.
The foregoing analysis, based primarily on N.J.S.A. 54A:5-1j and N.J.S.A. 54A:6-10 and -21, necesoatily incorporates a determination that partnership contributions to Keogh Plans on behalf of partners are deductible business expenses under N.J.S.A. 54A:5-1b, which defines net profits from business. As discussed above, the Director has acknowledged the deductibility, as business expenses, of Section 401(k) Plan contributions for employees, Section 401 (k) Plan contributions for partners, and Keogh Plan contributions for employees, but the Director has declined to *618 permit deduction of Keogh Plan contributions for partners. The issue of what costs and expenses are deductible under N.J.S.A. 54A:5-1b was considered in Sabino v. Director, Div. of Taxation, 296 N.J.Super. 269, 686 A.2d 1197 (App.Div.1996), where the court held that the statute permitted deduction of “ordinary” expenses. Id. at 275, 686 A.2d 1197. The Director contended that the expenses deductible under the statute were limited to “ordinary and necessary” business expenses as defined in I.R.C. § 162(a). Id. at 274, 686 A.2d 1197. The Appellate Division declined to determine whether the term “ordinary” is equivalent to “ordinary and necessary” as used in I.R.C. § 162(a), and remanded the matter to the Tax Court for resolution of this issue. Id. at 278, 686 A.2d 1197. In the remand proceedings, the Director reiterated his position that N.J.S.A 54A:5-lb incorporated the federal “ordinary and necessary” standard. The Tax Court held that this statute did not incorporate the federal standard, and that, for gross income tax purposes, only “ Tegular’ and ‘ordinary ” business expenses were deductible. Sabino v. Director, Div. of Taxation, 17 N.J.Tax 29, 43 (Tax 1997). The court provided no guidance as to the difference between an “ordinary and necessary’ business expense and an “ordinary and regular” business expense. This difference appears to be more a matter of nomenclature than substance, and I conclude that the definition of deductible business expenses under N.J.S.A. 54A:5-1b incorporates from I.R.C. § 162(a) the treatment of Keogh Plan contributions for partners as deductible business expenses.
Subsequent to Sabino, as part of the 1999 revision of his regulations, the Director adopted the following four-part definition of deductible business expenses.
An ordinary business cost or expense must be:
i. Incurred primarily and directly in the pursuit of the business’s income;
ii. Incurred as a common and accepted practice in that field of business;
iii. Required for and appropriate to the intended business purpose; and
iv. Reasonable in amount in relation to the intended business purpose.
[N.J.A.C. 18:35-1.1(d)(1).]
*619 Whether or not federal concepts are applicable, Keogh Plan contributions are ordinary business expenses as defined in this regulation and in prior law.
The decision by Ernst & Young to establish a Keogh Plan for the benefit of its partners was a business decision no different from the partnership’s decision to establish the EY 401(k) Plan for the benefit to its partners and employees. As discussed above, the Director has accepted partnership contributions to Section 401(k) Plans on behalf of partners as deductible business expenses. Keogh Plan contributions are not distinguishable. Indeed, because of the mandatory nature of the Keogh Plan contributions for Mr. Reck under the EY Keogh Plan, with all decisions as to the contributions being made by management at Ernst & Young, the contributions have an even greater aura of an “ordinary and regular” business expense than do elective contributions to the EY 401(k) Plan. In any event, contributions to both plans were made primarily and directly in pursuit of business income because their undoubted purpose was to motivate, and facilitate retention of, employees and partners. I take judicial notice, Ev. R. 201(b), that pension plan contributions were, and remain, a common and accepted practice in professional partnerships. The Ernst & Young contributions were required for, and appropriate to, the business purpose of retaining and motivating personnel, including partners, and the amounts contributed were limited to reasonable amounts by the Internal Revenue Code.
The Director’s position that the court should determine the deductibility of contributions to the EY Keogh Plan for Mr. Reck in accordance with the Director’s current and prior regulations, which provide that a Keogh Plan contribution for a partner is not deductible as a business expense in calculating the partner’s distributive share of partnership income, is substantially undercut by internal inconsistencies in the regulations and by the inconsistency between the Director’s position in Sabino and his current position. The internal inconsistencies in the regulations have resulted from the Director’s effort to distinguish the Gross Income Tax Act’s treatment of Section 401(k) Plan contributions from the *620 Act’s treatment of Keogh Plan contributions. In his 1999 regulations, the Director: a) applied the federal income tax definition of the term “employees” to N.J.S.A. 54A:6-21 so that Section 401(k) Plan contributions on behalf of partners are deductible as ordinary business expenses in calculating a partner’s distributive share of partnership income, and b) recognized that contributions on behalf of employees to Keogh Plans constitute ordinary business- expenses, but (c) refused to apply the federal definition of “employees” with respect to Keogh Plan contributions.
The Director has failed to provide any satisfactory explanation for this inconsistency in the regulations other than to state that treating partners as employees under N.J.S.A 54A:6-21 effectuates the purpose of that statute. Two responses are appropriate. First, as discussed above, the Director has not interpreted the applicable statutes, particularly, N.J.S.A 54A:6-10, correctly. Second, the Director has not clarified, or justified, the basis for his selective and seemingly illogical acceptance of the federal income tax definition of “employee” as to Section 401(k) Plans and rejection of that definition as to Keogh Plans. Additionally, in Sabino, as described above, the Director repeatedly asserted that the federal definition of deductible business expenses appearing in I.R.C. § 162(a) should be applied in calculating net profits from business under N.J.S.A. 54A:5-1b. He now asserts the contrary position. Under all of these circumstances, the Director’s regulations are not entitled to deference.
III.
Interest
The issue of the deductibility, in calculating a partner’s distributive share of partnership income, of interest on loans used to pay the partner’s capital contribution was decided in Dantzler v. Director, Div. of Taxation, 18 N.J.Tax 507 (Tax 1999), (opinion on motion for reconsideration dated October 23,1999). I concur with the analysis in Dantzler, and I see no reason to repeat it. I note that, if anything, the facts before me are even more compelling than those recited in Dantzler in support of the conclusion that the *621 interest payments are deductible. Here, Ernst & Young negotiated and set the terms of the loan; the loan proceeds could be used only as a capital contribution to the partnership; the partnership paid installments of interest and principal directly to the lender; Ernst & Young was obligated to deduct from distributions to Mr. Reck amounts equal to the principal and interest due on the loan. In summary, the loan was very much the equivalent of a borrowing of working capital by Ernst & Young.
For the reasons set forth in Dantder, therefore, I conclude that interest on Mr. Reek’s capital contribution loan was deductible in calculating his distributive share of partnership income for 1992 and 1993.
IV.
Conclusion
The Director shall re-calculate plaintiffs liability for gross income tax for 1992 and 1993 based on the rulings contained in this opinion, incorporating adjustments to which the Director has previously agreed as reflected in the Stipulation of Facts submitted by the parties. Counsel for the Director shall submit, pursuant to R. 4:42 — 1(c), a form of Judgment reflecting such calculations.

 The portion of the Smith opinion from which the quotation in Koch is derived reads in its entirety as follows. “Moreover, when the Legislature intended to incoiporate federal income tax concepts, it did so explicitly. For example, N.J.S.A. 54A:5-1b provides that net profits from business be determined in 'accordance with the method of accounting allowed for federal tax purposes.’ ’’ Smith v. Director, Div of Taxation, supra, 108 N J at 33, 527 A.2d 843.

 This amendment phased in increases in the amounts excluded from gross income tax over four years starting January 1, 2000. For years beginning on and after January' 1, 2003, the amount of the exclusions will be double the amounts set forth in the quoted language.